Alden WILSON, Appellant,

v.

UNITED STATES, Appellee.

No. 87–722.

District of Columbia Court of Appeals.

Argued Sept. 12, 1989.
Decided Jan. 19, 1990.

818

Kenneth H. Rosenau, appointed by this court, for appellant.

Ronald C. Crump, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Assistant U.S. Atty., at the time the brief was filed, and Helen M. Bollwerk, Asst. U.S. Atty., were on the brief, for appellee.

Before ROGERS, Chief Judge, and BELSON and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

Appellant appeals from his conviction of simple assault, D.C.Code § 22–504 (1989 Repl.), on the principal ground that the trial judge erred in ruling that a statement made by a Washington Metropolitan Area Transit Authority (WMATA) bus driver to his supervisor was not a Jencks [1] statement which the government was required to pro-

duce upon demand by the defendant. We hold that the statement by the government's key witness was subject to production by the government as Jencks material, and to assist in our determination of harmlessness, *Davis v. United States,* 564 A.2d 31, 41–42 (D.C.1989) (en banc), we direct the trial court to certify the recorded transmission containing the bus driver's statement to this court.

I

Appellant and his brother, Kevin Fleming, were found guilty of assaulting Tyrone Brady, a nine-year veteran bus operator for WMATA, while he was driving a group of students home from high school around 3 p.m. Brady testified that appellant and Fleming failed to pay their bus fares after being repeatedly asked to do so.[2] When the students on the bus became very rowdy, Brady concluded that it was no longer safe to continue driving the bus.[3] He, therefore, called his supervisor to advise him of the situation. When Brady stopped the bus, Fleming approached him and, with appellant by his side, threatened Brady verbally. Brady responded by getting out of the driver's seat and warning the group that he knew karate. He told Fleming and appellant to either pay their bus fares or leave the bus. As they were leaving, appellant punched Brady in the face and Fleming kicked Brady in the torso. Both left the scene immediately.

During direct examination, Brady testified that he called "dispatch" when the students became rowdy to advise "what the situation was," and that he was stopping the bus. The prosecutor subsequently asked Brady whether he had reported the assault. Brady responded, "Yes, I did," and that the METRO police [4] and a METRO supervisor came to the scene. During

---

1. 18 U.S.C. § 3500 (1982).

2. Earlier that afternoon a number of students, including appellant and Fleming, refused to pay their bus fares. A WMATA supervisor had ordered them off of the bus.

3. The students were wrestling with each other, swinging on the support poles, using foul language, and hanging out of the bus windows.

4. The WMATA police force is officially named the Metro Transit Police. *See* Washington Metropolitan Area Transit Authority Compact (WMATA Compact) § 76, D.C.Code § 1–2431 (1981).

cross-examination, defense counsel asked Brady whether there was a walkie-talkie or some sort of radio on the bus. Brady said there was and that he had radioed his supervisor, commenting that all transmissions from the bus by METRO telephone are recorded. At the bench, the following exchange took place: ˙

MS. HINKES: Your Honor, apparently, the witness testified that transmissions are made.

THE COURT: Did you subpoena them? [5]

MS. HINKES: I didn't know that such transmissions existed.

THE COURT: Bus service.

MS. HINKES: This would be Jencks in any case.

[COUNSEL FOR FLEMING]: I thought the Court of Appeals ruled that WMATA is a government agency, and it couldn't be sued without permission?

THE COURT: The purposes of a prosecution is not a government agency. [sic] It's not a law enforcement agency.

[PROSECUTOR]: Your Honor, for the record, I know two things: The jackets of the Government indicate that discovery was given in [Fleming's] case. The radio run did not appear to be asked for. In the case of [Wilson], there is no indication one way or another of a radio run ever being requested or discovery ever being made. This is the first time that I know of that the request now is for alleged radio runs made by a private corporation.[6]

Appellant and two other high school students who were passengers on the bus testified that Brady had provoked appellant and Fleming by yelling and gesturing at them and using foul language, and that the blows were struck in self-defense. They claimed they got off the bus when Brady threatened to call the police.

## II

On appeal appellant contends˙ that the trial judge erred in denying his request for the government to produce Brady's radio runs as Jencks material, and that the error was not harmless. The government responds that Brady's conversation with his supervisor about his decision to stop the bus, being part of WMATA's bus service, which is proprietary in nature, is not subject to production under the Jencks Act, and, in any event, any error would have been harmless.

■ For more than a quarter of a century, the courts in this jurisdiction have viewed "the principal objective of the Jencks Act ... to be enhancing the likelihood of truth by enabling the defendant to gain access to previous statements of witnesses and to use them as desired to test the accuracy of the actual testimony in court given by the same witness." *United States v. Perry*, 153 U.S.App.D.C. 89, 94, 471 F.2d 1057, 1062 (1972) (footnote citing legislative history omitted). Before the government's obligation arises under the Jencks Act to disclose to the defense the statements of government witnesses to government agents, however, four prerequisites must be met: (1) the material must be in the possession of the government; (2) the defense must request the material; (3) the material must constitute a "statement" as defined at 18 U.S.C. § 3500(e); and (4) the statement must relate to the subject matter of the witness' direct testimony. *See Butler v. United States*, 481 A.2d 431, 447 (D.C.1984), *cert. denied*, 470 U.S. 1029, 105 S.Ct. 1398, 84 L.Ed.2d 786 (1985). *See also* Super.Ct.Crim.R. 26.2(a). Only the first prerequisite is at issue in this appeal. Defense counsel advised the trial judge that she was unaware of the existence of the METRO recordings until Brady testified, and the government does not contend on appeal that the request was untimely. At trial, the prosecutor did not claim that

---

5. If the statement is Jencks material, it is irrelevant whether the statement is subject to subpoena. *See Matthews v. United States*, 322 A.2d 908, 911 (D.C.1974).

6. Contrary to the government's contention on appeal, it is clear from Brady's direct testimony that he made two transmissions. It also is clear that defense counsel sought both, referring to "transmissions." The prosecutor's statements also referred to radio *runs*.

the recordings were unrelated to Brady's testimony on direct examination. Indeed, the prosecutor did not even suggest that the recordings were not in his possession; his only point was that defense counsel had not requested the statements as a matter of discovery.[7] The question, then, is whether recorded information relayed to a WMATA bus supervisor is material in the "possession of the government."[8]

This court has recognized that the duty to disclose Jencks material extends to the government as a whole, including investigative agencies. *Bartley v. United States*, 530 A.2d 692, 697 (D.C.1987) (citations omitted). As explained in *United States v. Bryant*, 142 U.S.App.D.C. 132, 140, 439 F.2d 642, 650 (1971), the duty of disclosure affects not only the prosecutor, but "the government as a whole, including its investigative agencies," because the Jencks Act refers to evidence gathered by "the government," and not simply that held by the prosecution. In *Bryant*, tape recordings in the possession of the Bureau of Narcotics and Dangerous Drugs were held to constitute statements in the possession of the government.

The practice of requiring disclosure by the prosecution to the defense, whether as a result of statute or case law, serves complementary purposes. *See Gates v. United States*, 481 A.2d 120 (D.C.1984) (*Brady*), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985); *cf. United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir.1973) (*Brady v. Maryland* requires production of a statement of a postal office employee as an agency closely connected to the indictment), *rev'd on other grounds, United States v. Henry*, 749 F.2d 203 (5th Cir. 1984); *United States v. Ehrlichman*, 376 F.Supp. 29, 36 (D.D.C.1974) (*Brady*). "Access to certain evidence gathered by the government is protected by both constitutional and statutory safeguards...." *Bryant, supra*, 142 U.S.App.D.C. at 137–38, 439 F.2d at 647–48 (due process required disclosure where tape recording was "absolutely crucial" to guilt or innocence, either corroborating the testimony of the government's witness or completely undercutting the government's case). *See* Super. Ct.Crim.R. 16. The duty to disclose is intended in part "to make of the trial a search for truth informed by all relevant material, much of which, because of imbalance in investigative resources, will be exclusively in the hands of the Government." *Bryant, supra*, 142 U.S.App.D.C. at 138, 439 F.2d at 648.

WMATA is a creature of an interstate compact in which the elected representatives of the three jurisdictions comprise its board of directors. *See* WMATA Compact, §§ 5 & 8. The three jurisdictions, under a formula, fund a portion of WMATA's operations. *Id.*, §§ 16 & 17.[9] WMATA also has its own police force, which, while on METRO property located in the District of Columbia, exercises the same powers as the Metropolitan Police Department of the District of Columbia. *Id.*, § 76. To date, decisions examining the nature of WMATA have focused on its tort liability, viewing WMATA's functions as bifurcated, involving in some respects governmental functions as to which WMATA is immune from suit and in other respects proprietary functions as to which WMATA is not immune. *See, e.g., Hall v. WMATA*,

---

**7.** Once the trial judge ruled that the recordings were not subject to production, the question of government possession was not explored, and thus the record on appeal is not clear on this point. On appeal the government does contend that the recordings were not in its possession.

**8.** In its brief on appeal the government has conceded that had the bus driver's transmission

been directly to the METRO police, it would have been subject to production under the Jencks Act.

**9.** *See Morris v. WMATA*, 251 U.S.App.D.C. 42, 50 & nn. 8 & 9, 781 F.2d 218, 226 & nn. 8 & 9 (1986).

468 A.2d 970 (D.C.1983); *Qasim v. WMATA*, 455 A.2d 904 (D.C.) (en banc), *cert. denied*, 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983). The government has seized upon this analysis in maintaining that the transmissions were not Jencks material because bus service involves a proprietary and not governmental function of WMATA. Although bus service has been viewed as a proprietary function, *Qasim, supra*, 455 A.2d at 906, the courts also have concluded that when METRO police are involved, the WMATA function is governmental in nature. *See Morris, supra*, 251 U.S.App.D.C. at 44, 781 F.2d at 220 and cases cited. When WMATA is seeking to enforce its regulations or to protect its employees and involves its police force, however, the tort immunity analysis is irrelevant in defining the obligation of the government to disclose evidence. Rather than look to the immunity analysis developed for different purposes, our focus in addressing the Jencks issue must be on the nature of the proceeding and the purpose of the Jencks Act.

■ When the statement being sought by the defense as Jencks material is so closely intertwined with a prosecution arising out of an attempt to enforce WMATA regulations and protect a WMATA employee, *cf. United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), we conclude that production, upon request, is required. *See United States v. Deutsch, supra*, 475 F.2d at 57. The prosecution arose as a result of Brady's efforts to assure that bus passengers paid their bus fares. He stopped the bus because some of the passengers were out of control, endangering further operation of the bus. The record suggests that calling his supervisor was the means by which he sought supervisory as well as police assistance. Therefore, upon request, the government was obligated to disclose the tape recording if it was in the prosecutor's possession. *See United States v. Agurs, supra*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342;

*Bryant, supra*, 142 U.S.App.D.C. at 137–38, 439 F.2d at 647–48; *United States v. Ehrlichman, supra*, 376 F.Supp. 29; *McBride v. United States*, 441 A.2d 644, 657 (D.C.1982).

■ WMATA, or more specifically the METRO police, was the investigative arm for the prosecution in appellant's case, and to that extent WMATA was a governmental agency within the meaning of *Bartley, supra*, 530 A.2d at 697; *Bryant, supra*, 142 U.S.App.D.C. at 140, 439 F.2d at 650. The government cannot compartmentalize WMATA, prosecuting appellant while using an employee of WMATA as its principal witness and benefiting by the investigative activities of the WMATA police, but denying having access to WMATA radio transmission runs. *See United States v. Deutsch, supra*, 475 F.2d at 57. The government does not deny having had access to, but only actual possession of, the tape recording and has indicated no attempt to remedy the deficiency. Where the different "arms" of an agency are so closely connected for the purposes of a criminal prosecution, they are not severable entities. Other courts have held, and we agree, that evidence which is relevant to the defendant's case and to which the prosecution does not deny access or use in preparing its case for trial, even though it lacks physical possession, is within the possession of the government for purposes of the Jencks Act. *Id.; United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir.1977); *State v. Watson*, 318 S.E.2d 603, 609 (W.Va.1984).

■ Accordingly, we hold that the trial judge erred in denying appellant's request for production of the recorded transmission of Brady's call to his supervisor to report the circumstances which made continued operation of the bus impossible and the fact of his assault. So that this court

can determine whether nonproduction of the recording was harmless, *Davis, supra,* 564 A.2d at 41–42, we direct the trial court

**10.** If the transmission has been destroyed, the trial court shall make findings with respect to the time and circumstances of the destruction. Similarly, if the transmission otherwise is not or cannot be produced, the trial court shall make appropriate findings on the reasons for nonproduction and the efforts to secure production of the transmission.

**11.** Appellant also appeals the denial of his motion for a mistrial on the basis that various remarks made by the court to his counsel indicated a bias against his counsel which prejudiced him in the eyes of the jury. Only one of the remarks was made in the presence of the jury and it, like a statement the trial judge made to the prosecutor, concerned repetitive questioning. We find no abuse of discretion by the trial judge since there is no basis on which to conclude that the jury was clearly prejudiced by the

to certify the recorded transmission of the bus driver's statement to this court.[10]

*So ordered.*[11]

exchanges between the judge and defense counsel. *See Beale v. United States,* 465 A.2d 796, 799 (D.C.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984); *Khaalis v. United States,* 408 A.2d 313, 346–47 (D.C.1979), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980); *Watkins v. United States,* 379 A.2d 703, 708 (D.C.1977) (quoting *Williams v. United States,* 228 A.2d 846, 848 (D.C.1967)).

Finally, we find meritless appellant's contention, for the first time on appeal, that Brady's testimony regarding appellant's behavior on the bus prior to the assault, and the prosecutor's reference to this evidence in his opening statement, constituted inadmissible prior bad acts evidence which improperly placed appellant's character at issue. *See Toliver v. United States,* 468 A.2d 958, 960–61 (D.C.1983); *Allen v. United States,* 495 A.2d 1145, 1150–54 (D.C.1985) (en banc).