Rickey C. LYLES, Appellant

v.

UNITED STATES, Appellee.

No. 01–CF–1513.

District of Columbia Court of Appeals.

Argued Nov. 13, 2003.

Decided Aug. 4, 2005.

Sean C. Staples, appointed by the court, for appellant.

Rozella A. Oliver, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., and James G. McGovern, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY and REID, Associate Judges.

TERRY, Associate Judge:

Appellant Lyles was convicted of unauthorized use of a vehicle.[1] On appeal he contends that the trial court erred in ruling that notes taken by a Maryland police officer during a witness' oral report of the crime, which were never in the possession of the United States or any agency of the District of Columbia, were not subject to disclosure under the Jencks Act, 18 U.S.C. § 3500 (2000). We affirm.

I

A. *The Evidence at Trial*

On Sunday afternoon, June 17, 2001, Catherine Brunson drove her fiancé's 1984 gray Ford LTD to the Eastover Shopping Center in Oxon Hill, Maryland, to buy a six-pack of beer.[2] After arriving at the shopping center, Ms. Brunson parked the car in the parking lot, leaving the keys in the ignition and her driver's license in the car's console. She then entered a store and bought some beer. When she came out of the store less than ten minutes later, the car was gone.

Before returning home, Ms. Brunson stayed a few minutes at the shopping center, asking passersby if they had seen her car. She did not immediately contact the police because she did not have a complete record of the car's identifying information. Instead, she waited for her fiancé, Michael Conyers, to return home from a day of fishing. After Conyers returned that evening, he wrote down the information that she needed. Ms. Brunson then called the police to report the crime while Mr. Conyers began looking for his Ford LTD by driving his other car around the area. When Prince George's County police officers arrived at Ms. Brunson's home a few

---

1. Appellant was also indicted for receiving stolen property, but the jury could not reach a verdict on that charge, and it was later dismissed.

2. The Eastover Shopping Center is about five minutes by car from Ms. Brunson's home, which is also in Oxon Hill.

minutes later, she told them what had happened earlier that day.

For the next nine nights, Mr. Conyers continued to drive around nearby neighborhoods looking for his car. On the evening of June 26, he saw his Ford LTD coming toward him near the Eastover Shopping Center. Immediately he noticed that the car still had his license plates on it. Mr. Conyers quickly made a U-turn and followed the Ford LTD, which soon entered the District of Columbia and approached Fourth Street, Southeast. While tailing his Ford LTD, Mr. Conyers was able to get the attention of a police officer in a passing patrol car by honking his horn and then yelling out, "He stole my car, he stole my car." Officer Dana Robinson, hearing Conyers' cries, reacted immediately by turning on her patrol car's flashing lights and blocking the path of the Ford LTD. Despite the officer's actions, the LTD drove around the police car and continued down Livingston Terrace. Officer Robinson pursued the LTD in her police car, and eventually the LTD pulled over at the end of the street near a stop sign.

After the LTD stopped, the driver, later identified as appellant, got out and began to walk away. A passenger in the front seat also alighted and started to run. Officer Robinson got out of her police car, drew her service revolver, and directed appellant to stop and sit on the curb. The officer asked appellant "where he got the vehicle from." Appellant replied that he had bought the car for $200 from a man named "Gerald," but had failed to receive a bill of sale. Appellant then produced the car's registration, still in the name of Mr. Conyers, and said that he was supposed to receive the bill of sale the following day.

Appellant was the only defense witness. He testified that he bought the Ford LTD on June 26, 2001, in Oxon Hill, Maryland, from a man named Gerald—whose last name he did not know—for $200.[3] Gerald gave appellant the keys and the registration to the car, and told him that he did not then have the car's title, but could get it the following day. Upon learning that the title could not be provided immediately, appellant said, he called the Prince George's County Police Department from a friend's cellular phone to ask if the car had been reported stolen.[4] After the police told him they could not provide that information, appellant decided to go ahead and buy the car anyway without the bill of sale. Appellant admitted that Officer Robinson pulled him over later that day, but explained that he drove around her police car because he was unable to stop immediately.[5]

## B. *The Jencks Act Request*

Before the trial began, the prosecutor stated that "all of the police paperwork that is completed in this case" had been turned over to the defense.[6] Ms. Brunson

---

**3.** Appellant admitted that he purchased the car even though he had recently become unemployed. Coincidentally, appellant testified that until two or three weeks earlier he had worked at a fast-food restaurant in the same Eastover Shopping Center where the car was stolen.

**4.** Appellant did not have, or offer into evidence, any record from the cell phone company demonstrating that the call was made. He also did not know the last name of the "friend" whose cell phone he used to make the call.

**5.** Appellant denied that there was a passenger in the car with him while he was driving. He stated instead that a man named "News" walked over to the car when he stopped it after Officer Robinson's road block.

**6.** As we interpret the prosecutor's representation that "all" materials had been turned over, it was limited to the arresting officer's notes: "It is my understanding *the* police officer [Robinson] has no other notes" (emphasis added).

later testified on direct examination that she told the police officers who responded to her 911 call "exactly what I said here in court, and they wrote it down and they left." On cross-examination, Ms. Brunson was asked if she spoke with Prince George's County police officers. She replied that she called 911 from her home in Prince George's County and that uniformed police officers came to her home.[7] Ms. Brunson told the police officers what had happened during her trip to the East-over Shopping Center, and one of the officers took notes of the incident on a "flip pad," specifically writing down her description of the car, her name, and her telephone number at work. Hearing this, defense counsel requested that this police report be produced pursuant to the Jencks Act.

During the ensuing bench conference, the prosecutor stated that the report was "a Maryland report" and was therefore "not in my jurisdiction" because he had no control over it. The prosecutor noted in addition that the Maryland police documents were "equally accessible" to both the defense and the United States.[8] The court responded that it did not matter which police department took the report or notes ("it would be Jencks no matter who took it"); all that the defense was required to do was to show that a "substantially verbatim" statement had been recorded. At the court's suggestion, defense counsel attempted to elicit testimony from Ms.

Brunson which would demonstrate that substantially verbatim statements had been taken down by the police. Following this attempt, however, the court found that the police notes in question were not Jencks material because there was no indication that any substantially verbatim statement had been recorded by the Prince George's County police officers.[9] Consequently, the court denied defense counsel's Jencks Act request.

## II

■ Appellant argues that the trial court erred "in failing to order the government to produce Jencks material and in failing to conduct its own inquiry into the existence of the Jencks material." Contrary to appellant's assertion, the court did conduct such an inquiry,[10] but ultimately concluded that there was no Jencks material that had to be disclosed. We hold that the court did not err in its decision to deny the Jencks Act request, but for reasons different from those stated by the trial court.

■ "The administration of the Jencks Act must be entrusted to the 'good sense and experience' of the trial judges subject to 'appropriately limited review of appellate courts.'" *United States v. Augenblick*, 393 U.S. 348, 355, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969) (citation omitted); *accord, e.g., Slye v. United States*, 602 A.2d 135, 138 (D.C.1992). Moreover, even if the

---

7. Ms. Brunson said that she placed her telephone call from her home in Oxon Hill, Maryland, which is in Prince George's County. She never explicitly stated that the officers were in fact from the Prince George's County Police Department, but that was never disputed.

8. The prosecutor offered to try to obtain the report, but repeated his assertion that "[i]t's a report from another jurisdiction. I can't be held to have that within my control."

9. "[Y]ou haven't established that they were writing the whole time, and did he ask her to repeat anything.... [T]here is no indication that she gave or [that] there was a substantially verbatim statement taken by the officer."

10. "[T]he trial court has a duty to conduct an independent inquiry into the existence of Jencks material once a witness testifies that an officer took notes of a statement." *Flores v. United States*, 698 A.2d 474, 481 (D.C. 1997); *accord, e.g., Bayer v. United States*, 651 A.2d 308, 311 (D.C.1994).

court erred in its application of the Jencks Act, any such error is subject to a harmless error analysis. *Rosenberg v. United States,* 360 U.S. 367, 370–371, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959); *see Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (defining harmless error). In this case we conclude that the trial court erred in its reasoning as to why the Jencks Act request should be denied, but the error was harmless because its decision can be readily sustained on other grounds. *See, e.g., Prince v. United States,* 825 A.2d 928, 931 (D.C. 2003) ("an appellate court may uphold a trial court decision for reasons other than those given by that court" (citing cases)); *accord, Alston v. United States,* 518 A.2d 439, 440 n. 2 (D.C.1986).

■■■ The Jencks Act, which is implemented in the District of Columbia by Super. Ct.Crim. R. 26.2, "serves the concurrent purposes of aiding the search for truth by facilitating the impeachment of a witness who has given a statement to the government, while at the same time regulating access by the defense to materials and evidence *within the government's possession.*" *March v. United States,* 362 A.2d 691, 698 (D.C.1976) (citations omitted and emphasis added); *see Nelson v. United States,* 649 A.2d 301, 307 (D.C.1994).[11] Before the government may be required to turn over Jencks material to the defense, four prerequisites must be met,[12] only one of which—possession of the material by the government—is at issue in the instant case. *See Frye v. United States,* 600 A.2d 808, 810 (D.C.1991).

■■■ Under the Jencks Act, "the duty to produce materials attaches only to statements that are 'in [the government's] possession.'" *Id.* at 810 n. 4 (citing Rule 26.2). Appellant maintains, and we agree, that the duty of disclosure of Jencks materials in the government's possession extends beyond the individual prosecutor to the government "as a whole, including its investigative agencies." *United States v. Bryant,* 142 U.S.App. D.C. 132, 140, 439 F.2d 642, 650 (1971); *accord, e.g., Montgomery v. United States,* 384 A.2d 655, 662 (D.C.1978). Nevertheless, if a statement is not in the possession of "the prosecutorial arm of the federal government, nor in the possession of the government at all," the government is not obliged to produce it. *Nelson,* 649 A.2d at 308. "The Jencks Act is not 'so elastic as to embrace [such] materials' to which the prosecutor has never sought access." *Frye,* 600 A.2d at 812 (citing *United States v. Hutcher,* 622 F.2d 1083, 1088 (2d Cir.), *cert. denied,* 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980)).

■■■ The question we must decide is whether a Maryland police report and notes of an interview between Maryland police officers and Ms. Brunson following her 911 call can be held to have been in the possession of the United States. On the record before us, we conclude that these documents were never in the possession or control of the government—*i.e.,* the prosecutor, his office, and the District of Columbia Metropolitan Police Department—and that the trial court was therefore correct (albeit for the wrong reason) in denying

11. As relevant to this case, the Jencks Act requires the production of any witness statement "in the possession of the United States," 18 U.S.C. § 3500(b), whereas Rule 26.2(a) requires production of a statement in the possession of "the prosecutor." For the purposes of this appeal, any arguable difference between these two provisions is immaterial.

12. "The material must be in the possession of the government; the defense must request the material; the material must constitute a 'statement' as defined [in the Jencks Act]; and the statement must relate to the subject matter of the witness' direct testimony." *Butler v. United States,* 481 A.2d 431, 446 (D.C. 1984), *cert. denied,* 470 U.S. 1029, 105 S.Ct. 1398, 84 L.Ed.2d 786 (1985).

appellant's Jencks Act request. *See United States v. Marshall*, 328 U.S.App.D.C. 8, 13–14, 132 F.3d 63, 68–69 (1998) ("the government cannot be required to disclose evidence that it neither possesses nor controls").[13]

 Maryland and the District of Columbia are independent jurisdictions. *See* D.C.Code § 1–101 (2001). Criminal prosecutions in the District of Columbia, with limited exceptions not relevant here, "shall be conducted in the name of the United States by the United States attorney .... " D.C.Code § 23–101(c) (2001). Local law enforcement agencies outside the District of Columbia, such as the Prince George's County Police Department, are not part of the prosecutorial arm of the United States, and thus the Jencks Act does not require production of statements in the possession of such agencies. *See, e.g., Marshall*, 328 U.S.App. D.C. at 13–14, 132 F.3d at 68–69 (1998) (there is "ample authority" that evidence held by "local law enforcement offices, such as the [Prince George's] County Police Department," is not "within the possession, custody or control of the [United States] government"). "The Jencks Act requires the government to produce only such material as it has. Materials in the possession of state agencies are not within the scope of the Jencks Act." *United States v. Molt*, 772 F.2d 366, 371 (7th Cir.1985) (citations omitted); *see, e.g., United States v. Durham*, 941 F.2d 858, 860–861 (9th Cir.1991) (federal prosecutor not obligated under the Jencks Act to produce statements in possession of state agency); *Bruce v. State*, 318 Md. 706, 726, 569 A.2d 1254, 1264 (1990) (Maryland prosecutor not required to obtain written statements provided to New York police officers). In addition, the Maryland authorities and the Metropolitan Police Department did not undertake a joint investigation in the instant case. The Jencks Act does not apply to statements made to state officials when there is no joint investigation or cooperation between state and federal authorities. *United States v. Moeckly*, 769 F.2d 453, 463–464 (8th Cir.1985).

Appellant argues that *United States v. Heath*, 580 F.2d 1011 (10th Cir.1978), stands for the proposition that the Jencks Act requires United States prosecutors to obtain statements made by testifying witnesses to state police officers. In that case the court said, "It seems obvious to us that a witness who is to testify for the government, who has made a statement to state officers, is subject to the [Jencks] Act. It will not do for the district attorney to stand on technicality and say that he does not have actual possession of it." *Id.* at 1018–1019. These remarks, however, must be read in context. In a footnote following this statement, the court noted that there was "authority to the contrary" from other circuits, and therefore the court limited its holding to situations in which there was a joint investigation:

> At least under the circumstances of this case there was close cooperation between state and local officers and the federal prosecutor. Where the prosecutor, in his statements to the court, assumed the responsibility for obtaining any statements in the possession of state

---

**13.** The government concedes that the trial court erred in placing the burden on appellant to demonstrate that the Maryland police report and interview notes were a substantially verbatim recording of what Ms. Brunson had said. The defense does not have such a burden. *See Johnson v. United States,* 800 A.2d 696, 700 (D.C.2002); *Moore v. United States,* 657 A.2d 1148, 1151 (D.C.1995); *Williams v. United States,* 117 U.S.App.D.C. 206, 208–209, 328 F.2d 178, 180–181 (1963). Defense counsel "need elicit only that the witness was interviewed by an agent of the government, who made notes of the conversation." *United States v. Jackson,* 450 A.2d 419, 425 (D.C.1982) (citations omitted).

officers, the government could not subsequently disclaim responsibility for failure to disclose.

*Id.* at 1019 n. 1. The particular facts of *Heath* are not present in the case before us.[14] Here there was, at best, only minimal contact between the Prince George's County police, on the one hand, and the Metropolitan Police Department and the United States Attorney's Office on the other.[15] Nor did the prosecutor ever commit himself to obtaining any notes from the Prince George's County police; at most, he said he would "endeavor to get" whatever might be available, while emphasizing that the Maryland police notes were not "within [his] control."

*Robinson v. United States,* 825 A.2d 318 (D.C.2003), does not require us to hold otherwise. In *Robinson* a police officer responding to a report of telephone threats was present at the complainant's home when another telephone call from the defendant, a prisoner at the Lorton Correctional Complex (from which the original telephone threats had come), was made to the complainant. The officer, at the complainant's request, answered the telephone and heard an operator—apparently from Lorton—say that the call would be recorded. On these unusual facts, this court held that the tape recording of the initial threats was a statement within the meaning of the Jencks Act,[16] and that it could be said to be in the possession of the government because the investigating officer had knowledge that the telephone threats were recorded by prison authorities *at the time they were made.* Our holding, however, was limited to the particular "circumstances" of the case. *Id.* at 328. Those "circumstances" are far removed from the facts in the case at bar.

We therefore hold that because neither the United States government nor the District of Columbia police department was, at any time, in possession of Ms. Brunson's statement to the Maryland police, the prosecutor was not obliged to produce it, even assuming (without deciding) that it otherwise met the Jencks Act's definition of a "statement." Appellant's conviction is

*Affirmed.*[17]

---

**14.** In *Heath* the defendants were charged with conspiracy to distribute heroin. Their scheme involved the importation of heroin from Mexico and its distribution throughout the United States. State and local authorities worked closely with federal agents and prosecutors in developing the case, which was eventually tried in federal court. One of the principal witnesses at the trial had made statements to an Oklahoma police officer, which the court held were subject to a Jencks Act request. *See* 580 A.2d at 1018–1019.

**15.** Indeed, the successful recovery of the stolen car was largely the result of efforts by the car's owner in searching for it every night.

**16.** The tape recording was held to be a Jencks Act statement of the complaining witness, who was the defendant's former girl friend and one of the two parties to the phone call. We also held independently that it was direct evidence of the charged offense, namely, threats to do bodily harm. *See* 825 A.2d at 329.

**17.** In light of our holding, we need not consider appellant's additional contention that the trial court erred in allocating the burden of proof at the Jencks Act hearing. See note 13, *supra.*