905 A.2d 195 (2006)
In re T.H., Appellant.
No. 04-FS-1332.
District of Columbia Court of Appeals.
Argued April 21, 2006.
Decided August 3, 2006.
*196 Enid Hinkes, appointed by the court, for appellant.
Janice Y. Sheppard, Assistant Attorney General, with whom Robert J. Spagnoletti, *197 Attorney General of the District of Columbia, Edward Schwab, Deputy Attorney General, and Rosalyn Calbert Groce, Chief, Juvenile and Criminal Section, were on the brief, for appellee.
Before REID, KRAMER and FISHER, Associate Judges.
REID, Associate Judge:
This case is related to In re R.K.S., 905 A.2d 201, 2006 WL 2167256 (D.C.2006), which we also decide today. T.H. and R.K.S. are brothers who were tried together and adjudicated in the Superior Court's Family Division  Juvenile Branch on charges of unauthorized use of a vehicle ("UUV") and receiving stolen property ("RSP"). T.H. challenges his adjudication on three grounds: (1) the evidence was insufficient as a matter of law to convict him of UUV and RSP; (2) the trial court erred by failing to compel the government to produce Jencks Act statements; and (3) both the trial court and the government failed to carry out their respective parens patriae roles. For the reasons stated in the "sufficiency of the evidence" section of the companion case, In re R.K.S., supra, we hold that the evidence presented by the government on the RSP charge was sufficient as a matter of law to sustain T.H.'s adjudication on the UUV and the RSP charges. In doing so, we conclude that the trial court made no reversible ruling under the Jencks Act, or the parens patriae doctrine.

FACTUAL SUMMARY
In In re R.K.S., supra, we summarized the pertinent facts regarding R.K.S. and T.H.'s adjudication. We incorporate that factual summary into this opinion.

ANALYSIS

The Jencks Act Issue
T.H. contends that the trial court incorrectly "immediately ruled that nothing that was done in Maryland had to be produced as Jencks [Act, 18 U.S.C. § 3500(b)] material." The government asserts that "there was no dispute that there were no [Jencks Act] statements in the possession of the [District] government prosecutor that had not been provided to the trial court and turned over to T.H."
"Under the Jencks Act, the duty to produce materials attaches only to statements that are in [the government's] possession." Lyles v. United States, 879 A.2d 979, 983 (D.C.2005) (alteration in original) (citation and internal quotation marks omitted). See also Frye v. United States, 600 A.2d 808, 810 (D.C.1991) (The Jencks Act "is `a limited statutory scheme which serves the concurrent purposes of aiding the search for truth by facilitating the impeachment of a witness who has given a statement to the government, while at the same time regulating access by the defense to materials and evidence within the government's possession.'") (quoting March v. United States, 362 A.2d 691, 698 (D.C.1976)) (other citation omitted). In addition to the Jencks Act, Super. Ct. Juv. R. 26.2 also requires production of certain statements.[1] If the District government does not have possession of the *198 requested statements, "the government is not obliged to produce [them]." Lyles, supra, 879 A.2d at 983 (citing Nelson v. United States, 649 A.2d 301, 308 (D.C. 1994)).
T.H. concedes in his brief that "[t]he only Jencks material in this case would have been produced in Maryland by the officers who testified in this case." In fact, only Maryland law enforcement officers testified, and none of these officers referenced any statements that had been turned over to the District's MPD or the prosecutor. Moreover, the District's prosecutor informed the trial court that he had taken no notes on his conversations with the Maryland State trooper or the Maryland detectives. Simply put, there is no showing on this record that the District had in its possession a "statement" within the meaning of the Jencks Act, or Super. Ct. Juv. R. 26.2, that "relate[d] to the subject matter of [any government] witness's direct testimony." Robinson v. United States, 825 A.2d 318, 326 (D.C. 2003) (citing Frye, supra, 600 A.2d at 810) (internal quotation marks and other citations omitted). Hence, we hold that the trial court did not violate the Jencks Act.

The Parens Patriae Issue
T.H. contends that "[b]oth the government and the trial court ignored their obligations to [him] as parens patriae, and violated . . . statutory protections." Specifically, he faults the trial court for allowing a Maryland prosecutor to remain in the courtroom during T.H.'s trial even though the prosecutor "did not request permission on the record," and hence, he states, the cloak of confidentiality attached to juvenile proceedings was breached. In addition, he argues that the District failed to take him to the Director of Social Services within a reasonable period of time, and instead, left him in police custody. Moreover, he maintains that following his adjudication, the trial court imposed a "penalty" on him by immediately committing him to the custody of a District agency until age 21 and by sending him to the D.C. Jail. The District maintains that the trial court committed no reversible error, that the Maryland prosecutor had a "proper interest" in R.K.S.' and T.H.'s case, and that "a technical violation of [statutory] time limitations . . . doe[s] not require automatic dismissal."
The parens patriae concept connotes "the State's sovereign power of guardianship over minors and other persons under disability." In re J.J.Z., 630 A.2d 186, 193 n. 12 (D.C.1993) (citations and internal quotation marks omitted). In the District, both the trial court and the Attorney General, D.C. (formerly the Corporation Counsel, D.C.) "play the parens patriae role." In re P.D., 664 A.2d 337, 341 (D.C.1995) (citing In re J.J.Z., supra, 630 A.2d at 194.) We have discussed and applied the parens patriae concept most often in termination of parental rights, adoption, and abuse and neglect cases. See, e.g., In re J.L., 884 A.2d 1072, 1079 (D.C.2005) (In termination of parental rights cases, including the waiver of consent, the judge "acts as parens patriae on the child's behalf.") (citation omitted); In re A.H., 842 A.2d 674, 684 (D.C.2004) (citing In re T.W., 732 A.2d 254, 258 (D.C. 1999)) ("The court acts in a neglect proceeding as parens patriae and has the paramount obligation and broad authority to protect the best interests of the child where the parent is unwilling or unable to do so.") (internal quotation marks omitted); In re S.G., 581 A.2d 771, 778 (D.C. 1990) ("Neglect statutes authorizing state intervention on a child's behalf are remedial, and they should be liberally construed to enable the court to carry out its obligations as parens patriae."). In a case involving assault with a deadly weapon, we *199 reiterated that: "Parens patriae requires the juvenile court to do what is best for the child's care so long as this disposition provides adequate protection for society." In re L.J., 546 A.2d 429, 437 (D.C.1988) (quoting Kent v. United States, 130 U.S.App. D.C. 343, 346, 401 F.2d 408, 411 (1968)) (emphasis added) (internal quotation marks omitted); see also Kent v. United States, 383 U.S. 541, 554-55, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) ("The objectives [of Juvenile Court] are to provide measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment. The State is parens patriae rather than prosecuting attorney and judge.") (emphasis added). In the delinquency case before us, then, the parens patriae concept is tempered by the need to adequately protect society.
Before R.K.S. and T.H.'s trial began, counsel for both juveniles attempted to convince the trial judge that a prosecutor for the State of Maryland should be excluded from the courtroom on the grounds that he was not a member of the D.C. Bar, and that juvenile proceedings are "private" and are "not supposed to provide free discovery for the government of another jurisdiction." The trial court asked for a statutory citation and when defense counsel requested "a brief pass" to go to the library, presumably to find a citation to authority, the judge denied the request. On appeal, T.H. and R.K.S. claim that the trial court ignored their assertion "that the Charles County prosecutor's purpose in the courtroom was to obtain information for trial in Maryland, which would be antithetical to the requirement of confidentiality."
D.C.Code § 16-2316(e) (2001) provides in pertinent part:
Except in hearings to declare a person in contempt of court, the general public shall be excluded from hearings arising under this chapter. Only persons necessary to the proceedings shall be admitted, but the [Family] Division may, pursuant to rule of the Superior Court, admit such other persons (including members of the press) as have a proper interest in the case or the work of the court on condition that they refrain from divulging information identifying the child or members of his family involved in the proceedings.[2]
Super. Ct. Juv. R. 53 implements § 16-2316(e) by repeating the general statutory rule, but also by specifying persons deemed to have "a proper interest" in the juvenile proceedings and who, therefore, are not required to apply for admission into a juvenile proceeding. The list includes "[a]ny member of the Bar of the District of Columbia." Rule 53(a)(2)(A). Rule 53(a)(3)(A) and (B) covers persons who must fill out an application to be admitted to the courtroom, including "[a]ny attorney who is not a member of the Bar of the District of Columbia." And, Rule 53(a)(4) applies to "[o]ther persons" who have a "proper interest" and who must apply for admission and agree to safeguard the confidentiality of the proceeding. Here, the proper procedure was not followed with respect to the Maryland prosecutor, assuming he was not a member of the D.C. Bar. Nevertheless, he appeared to have a "proper interest" in the proceeding and the trial judge, implicitly at least, gave him permission to remain in the courtroom. Since the State of Maryland was interested in R.K.S.' and T.H.'s *200 trial because of related events in Maryland, and at any rate would have had access to the transcripts of the proceeding under D.C.Code § 16-2331(b)(6),[3] as the trial court recognized, we discern no reversible error in that decision. See In re Ti.B., 762 A.2d 20, 30, 33 (D.C.2000) ("The legislative policy of confidentiality serves important ends . . . [but] that policy is not absolute and its statutory implementation is not unlimited," and "the trial court abused its discretion in excluding" counsel for the father in a neglect proceeding, under D.C.Code § 16-2316(e)).
T.H. also complains that he was not taken promptly to the Director of Social Services following his detention at the Seventh District police station, as Super. Ct. Juv. R. 105(c) requires, and D.C.Code § 16-2311(a)(2) mandates ("A person taking a child into custody shall with all reasonable speed  . . . bring a child alleged. . . delinquent before the Director of Social Services."). Even where the precise statutory or regulatory time frame is not followed, as here however, reversal of an adjudication is not compelled. See In re D.H., 666 A.2d 462, 470 (D.C.1995) ("[A] technical violation of the time limitations. . . does not require automatic dismissal. . . ."); In re F.D.P., 352 A.2d 378, 382 (D.C.1976) (Where confession was completed within three hours of arrest, but appellant was not taken to the Director of Social Services, failure to do so "cannot . . . vitiate an otherwise valid confession.") (citation and internal quotation marks omitted). Moreover, T.H. waived his Miranda[4] rights before giving a statement to the Deputy Sheriff from Charles County. With respect to both juveniles and adults, we repeatedly have held that a waiver of Miranda rights also constitutes a waiver of the right to prompt presentment. See, e.g., In re F.D.P., 352 A.2d at 382 (the waiver of Miranda rights "constituted a temporary waiver of [the juvenile's] right to prompt presentment before the Director of Social Services"); United States v. Bell, 740 A.2d 958, 963 (D.C.1999) ("we have held repeatedly that a valid waiver of . . . Miranda rights [by an adult] is also a waiver of his Mallory [Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957)] right to presentment without unnecessary delay.") (citation and internal quotation marks omitted).
Nor do we see any reversible error in the trial court's decision to proceed immediately with disposition, and to commit T.H. to the District's Youth Services Administration ("YSA") until his twenty-first birthday, as authorized by D.C.Code § 16-2322(a)(4) (Generally, "a dispositional order vesting legal custody of a child adjudicated delinquent . . . in a department, agency, or institution shall remain in force for an indeterminate period not to exceed the youth's twenty-first birthday."). T.H. already had been committed to YSA in another case by a different judge, and was subject to being released to Maryland; therefore, we are satisfied that his immediate commitment did not constitute "a penalty."
*201 Accordingly, for the foregoing reasons, we affirm T.H.'s adjudication on the UUV and the RSP charges.
So ordered.
NOTES
[1] Super. Ct. Juv. R. 26.2(a) provides:

(a) Motion for production. After a witness other than the respondent has testified on direct examination, the judicial officer, on motion of a party who did not call the witness, shall order the Corporation Counsel [the Attorney General, D.C.] or the respondent and the respondent's attorney, as the case may be, to produce for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.
[2] D.C. Law 15-261, § 602(c), March 17, 2005, amended D.C.Code § 16-2316(e) (Supp.2005).
[3] D.C.Code § 16-2331(b)(6) provides in relevant part:

(b) Juvenile case records shall be kept confidential and shall not be open to inspection; but, subject to [certain] limitations. . ., the inspection of those records shall be permitted to 
(6) the United States Attorney for the District of Columbia, his assistants, and any other prosecuting attorneys involved in the investigation or trial of a criminal case arising out of the same transaction or occurrence as a case in which a child is alleged to be delinquent . . . .
See note 2, supra.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).