*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CM-1293

JALIL RAHMAN, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-1980-17)

(Hon. Robert A. Salerno, Trial Judge)

(Submitted March 20, 2019                    Decided April 15, 2019)[*]

*Nicholas Q. Elton* was on the brief for appellant.

*Jessie K. Liu*, United States Attorney, and *David P. Saybolt*, *Elizabeth Trosman*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN and THOMPSON, *Associate Judges*, and FERREN, *Senior Judge*.

FERREN, *Senior Judge*: Appellant Jalil Rahman appeals his conviction for

unlawful entry in violation of D.C. Code § 22-3302 (2012 Repl.) on two grounds:

---

[*] The decision in the case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of a motion to publish filed by appellee.

(1) the trial court erred in denying his motion under the Jencks Act[1] to require the government to produce a report prepared by a special police officer ("SPO") or, alternatively, to strike the SPO's testimony; and (2) there was insufficient evidence to support his conviction.  We affirm.

## I.  Factual and Procedural Background

At approximately 1:30 a.m. on February 2, 2017, appellant entered a McDonald's restaurant located in the District of Columbia.  SPO Latisha Chapman, who was employed by McDonald's to "mak[e] sure people don't loiter, make sure people don't steal soda," and "put [people] out for being disorderly," testified that she observed appellant sit down at the back table with his bags for approximately four or five minutes.  At that point, she informed appellant that McDonald's has a "no loitering policy" and that he would "need to buy something from McDonald[']s to sit in McDonald[']s."  Appellant responded that he did not have any money and could not buy anything, but "was not going anywhere."  SPO Chapman "repeatedly" told appellant that "he needed to leave if he's not buying something," but appellant insisted that "he's not going nowhere."

---

[1]  18 U.S.C. § 3500 (2012).  *See also Jencks v. United States*, 353 U.S. 657 (1957).

Appellant then asked a customer if he could have some money so he could buy something to eat. SPO Chapman told appellant that he could not ask customers for money inside the McDonald's because "[t]hat's considered panhandling." SPO Chapman summarized her encounter with appellant as follows: "he was on the property, he refuse[d] to leave, I told him several times to leave, he started panhandling, and the police officer took action."

After SPO Chapman had been interacting with appellant for approximately ten minutes, Metropolitan Police Department ("MPD") officer Joseph Thomas approached. Officer Thomas testified that he was conducting a business check at the McDonald's and was about to leave when he "overheard the security officer . . . having a conversation with [appellant] in reference to needing to leave." SPO Chapman told appellant "[t]o leave," but "[h]e didn't leave." Then, Officer Thomas went over and explained to appellant that the McDonald's is "private property," and so "if the security [officer] wants you to leave for whatever reason then you need to leave." Officer Thomas testified that, after this exchange, appellant "left out the door."[2]

---

[2] SPO Chapman testified that appellant never left the McDonald's. Officer Thomas testified that appellant did go outside the entrance to the McDonald's, but he did not see how far appellant went after that.

Officer Thomas stood inside the McDonald's for approximately three to four minutes "talking to the security officer with [his] back towards the door," when appellant re-entered the restaurant and startled Officer Thomas by coming up from behind him and asking for his name and badge number. At that point, Officer Thomas arrested appellant for unlawful entry.

The matter proceeded to a one-day bench trial. During re-cross examination of SPO Chapman, appellant learned that she had prepared a written report after the incident detailing what had transpired. SPO Chapman explained that she was not obligated "[t]owards the police officer" to prepare this report, but "did a report for [her] company . . . [b]ecause they want to know why I want him off the property." She stated that she had e-mailed the report after it was completed, and kept it at the McDonald's office.

Appellant's counsel argued that the report was subject to the Jencks Act, and asked that the report be provided or that SPO Chapman's testimony be stricken. The trial judge denied the request, explaining that "although it sounds like her report is a written statement by her that is adopted by her, it's at this point not producible because it's not within the possession of the [g]overnment." The judge further explained that he was "not going to find that internal McDonald[']s . . .

reports are within the possession of the [g]overnment" and concluded that "there's no obligation for the [g]overnment to produce as <u>Jencks</u> . . . internal McDonald[']s corporate documents that . . . the [g]overnment doesn't otherwise have."

At the close of the government's case, appellant moved for a judgment of acquittal. Appellant argued that because he had left the McDonald's after being instructed to leave by Officer Thomas, was not barred from the restaurant, and re-entered with a good-faith belief that he could return to ask for Officer Thomas's name and badge number, the government had failed to prove him guilty of unlawful entry beyond a reasonable doubt.

In ruling on the motion, the trial judge explained that "there are two varieties of unlawful entry. The first variety is entry without authority and the second variety is remaining without authority. The arguments we've heard about going back into the McDonald[']s to get the badge number and name of the officer go to the entry without authority type of unlawful entry." But the court concluded that, even if those arguments were successful, they would not be dispositive because "a reasonable fact-finder here could find that [there was an] unlawful entry, without even dealing at all with the return to the McDonald[']s." The trial judge explained that "[i]t wasn't until the police officer arrived that either [appellant] agreed to

leave or was escorted out. But, prior to that, he remained for 10 minutes after he had been told to leave by special police officer Chapman. And it's on that basis that a reasonable fact-finder could find an unlawful entry in this case." Accordingly, the judge denied appellant's motion.

After closing arguments, the trial court found appellant guilty of unlawful entry, explaining that it was "not concluding that an unlawful entry occurred in this case based on the return to McDonald[']s to get the name and badge number. The [c]ourt is concluding that an unlawful entry [occurred] in this case . . . based on the failure to leave when directed by the special police officer to do so." The trial judge rejected appellant's argument that briefly leaving the restaurant "wip[ed] the slate clean [as to his] underlying . . . initial failure to leave," in part because of "the very short period of time between when he left and when he returned," and because "the fact that [appellant] was given a break and not immediately arrested at that time when he could've been does not preclude the officer from later doing so." Appellant subsequently filed this appeal challenging both the trial court's Jencks Act ruling and the sufficiency of the evidence.

## II.     Standard of Review

The proper construction of the Jencks Act is a legal question which we review *de novo*.[3]   But because the "administration of the Jencks Act must be entrusted to the good sense and experience of the trial judges subject to appropriately limited review of appellate courts,"[4] we review the trial court's rulings on Jencks Act issues for abuse of discretion.[5]  "Moreover, even if the court erred in its application of the Jencks Act, any such error is subject to a harmless error analysis."[6]

Our review of sufficiency-of-the-evidence claims is "deferential, giving 'full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

---

[3]  *See Weems v. United States*, 191 A.3d 296, 300 (D.C. 2018) (construing Super. Ct. Crim. R. 16).

[4]  *Robert Johnson v. United States*, 800 A.2d 696, 699 (D.C. 2002) (quoting *United States v. Augenblick*, 393 U.S. 348, 355 (1969)).

[5]  *Lazo v. United States*, 54 A.3d 1221, 1231 (D.C. 2012).

[6]  *Lyles v. United States*, 879 A.2d 979, 982-83 (D.C. 2005).

facts to ultimate facts.'"[7] We accept the trial judge's factual findings after a bench trial unless they are "plainly wrong or without evidence to support them,"[8] and "deem the proof of guilt sufficient if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[9]

### III.    Analysis

#### A.    The Jencks Act

The Jencks Act, which is implemented in the District of Columbia by Rule 26.2 of the Superior Court Rules of Criminal Procedure, "serves the concurrent purposes of aiding the search for truth by facilitating the impeachment of a witness who has given a statement to the government, while at the same time regulating access by the defense to materials and evidence *within the government's*

---

[7] *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[8]  *Cannon v. United States*, 838 A.2d 293, 296-97 (D.C. 2003) (quoting D.C. Code § 17-305(a) (2001)) (internal quotation marks and alteration omitted).

[9] *Rivas*, 783 A.2d at 134 (quoting *Jackson*, 443 U.S. at 319).

*possession.*'"[10]  "Before the government may be required to turn over Jencks material to the defense," it is a prerequisite that "[t]he material must be in the possession of the government."[11]  The first issue we must decide, then, is whether SPO Chapman's report was "in the possession of the government" for purposes of the Jencks Act.

At trial, the prosecution represented that it did not have, and never had, SPO Chapman's report in its actual possession.  Appellant has presented no evidence to the contrary, and the prosecution has confirmed on appeal that its "trial file contains no paperwork completed by SPO Chapman."  We therefore defer to the trial court's finding, which is not "plainly wrong or without evidence to support it," that the prosecution did not actually possess SPO Chapman's report.[12]

However, appellant contends that even if the prosecution never possessed the report, SPO Chapman's possession of the report is sufficient to impute possession to the government.  We have held that the obligations imposed by the

---

[10]  *Lyles*, 879 A.2d at 983 (quoting *March v. United States*, 362 A.2d 691, 698 (D.C. 1976)) (emphasis in original).

[11]  *Id.* & n.12.

[12]  D.C. Code § 17-305 (2012 Repl.).

Jencks Act "extend[] beyond the individual prosecutor to the government 'as a whole, including its investigative agencies.'"[13] "Nevertheless, if a statement is not in the possession of 'the prosecutorial arm of the government, nor in the possession of the government at all,' the government is not obliged to produce it."[14] Appellant maintains that because SPOs are "recognized as an arm of the government in certain circumstances,"[15] SPO Chapman's possession of the report constitutes possession by the government for purposes of the Jencks Act.

The merits of this argument turn on whether, on the facts of this case, SPO Chapman "can be deemed a member of what we have called 'the prosecution

---

[13] *Lyles*, 879 A.2d at 983 (quoting *United States v. Bryant*, 439 F.2d 642, 650 (D.C. Cir. 1971)).

[14] *Id.* (quoting *Nelson v. United States*, 649 A.2d 301, 308 (D.C. 1994)).

[15] *See, e.g.*, *Limpuangthip v. United States*, 932 A.2d 1137, 1143 (D.C. 2007) (explaining that, for Fourth Amendment purposes, "SPOs are not in all their actions equated with regular police officers, but an SPO does act as a state agent or instrument when the challenge involves the arrest of a suspect and actions related thereto" (internal quotation marks and alterations omitted)); *Moorehead v. District of Columbia*, 747 A.2d 138, 143-46 (D.C. 2000) (stating that "[w]hile there may be cases in which the particular facts show that a special police officer is an agent of the District" for *respondeat superior* purposes, "status as an SPO is not determinative of a principal-agent or master-servant relationship").

team.'"[16]   In past cases raising this issue, we looked to:   (1) whether the actor performed a governmental function; and (2) whether the actor, though performing in a proprietary function, was "sufficiently involved in the prosecution or investigation of a criminal offense so that, for discovery purposes, the function may be deemed 'governmental.'"[17]

Here, the trial court's implicit finding that SPO Chapman's report was proprietary in nature is well-supported.  Although SPOs are subject to varying regulations,[18] we are aware of no regulation requiring an SPO to prepare an incident report, and appellant cites none.  SPO Chapman testified that she was not obligated "[t]owards the police officer" to prepare the incident report, but prepared it "for [her] company" because "they want to know why I want him off the property."  The report was apparently kept in a McDonald's office and e-mailed to

---

[16]  *Myers v. United States*, 15 A.3d 688, 690 (D.C. 2011) (quoting *Robinson v. United States*, 825 A.2d 318, 328 (D.C. 2003)).

[17]  *Id.* at 691 (concluding that a digital video recording from a WMATA bus was not in the government's possession for purposes of Super. Ct. Crim. R. 16). *See also Wilson v. United States*, 568 A.2d 817 (D.C. 1990), *vacated on other grounds*, 568 A.2d 817 (D.C. 1991) (concluding that a recorded transmission of a WMATA bus driver reporting an assault was subject to the Jencks Act).  Although the decision in *Wilson* was vacated and is no longer binding precedent, it nonetheless provides some useful guidance here.  *Cf. Myers*, 15 A.3d at 691 n.8.

[18]  *See* 6A D.C.M.R. 1100-10.

McDonald's personnel. There is no evidence that it was ever provided to the prosecution or police, or that it was used as part of their investigation. As a result, the trial court's finding that SPO Chapman's report was an "internal McDonald[']s corporate document[]" was not "plainly wrong or without evidence to support it."[19] In preparing the report, SPO Chapman performed a proprietary, and not governmental, function.[20]

Nor was SPO Chapman "sufficiently involved" in appellant's arrest to become a member of the prosecution team. Although SPO Chapman initially notified appellant that he could not loiter or panhandle inside the McDonald's and would have to leave, she testified that, when Officer Thomas approached the situation, "he then took over and [she] observed[.]" The testimony at trial was unambiguous that appellant was detained, handcuffed, arrested, and escorted out of the McDonald's solely by Officer Thomas. There is no evidence that SPO Chapman assisted Officer Thomas in the arrest in any way. On this record, then, we cannot say that SPO Chapman was "sufficiently aligned with and subject to the

---

[19] D.C. Code § 17-305.

[20] *Cf. Weems*, 191 A.3d at 304 (ruling that items in the possession of Wal-Mart asset protection staff were not in the possession of the government in part because the staff members "were private parties acting as agents of their private employer to protect its property from theft, not as agents of law enforcement").

direction of the police or prosecutor as to be deemed a member of the prosecution team[.]"[21]

In sum, we conclude that the trial court did not abuse its discretion in ruling that SPO Chapman's report, though prepared by an SPO, was an "internal McDonald[']s corporate document[]" not "in the government's possession" for purposes of the Jencks Act.

### B. Sufficiency of the Evidence

"The District of Columbia unlawful entry statute provides for the punishment of anyone who remains on either private or public property without lawful authority and who refuses to leave on the demand of the person lawfully in charge."[22] "As applied to private property," we have explained, "the two

---

[21] *Weems*, 191 A.2d at 305; *see also Lyles*, 879 A.2d at 983-85 (concluding that documents in the possession of the Prince George's County police were not in the possession of the Metropolitan Police Department because the two entities "did not undertake a joint investigation").

[22] *O'Brien v. United* States, 444 A.2d 946, 948 (D.C. 1982). The statute provides, in full:

> Any person who, without lawful authority, shall enter, or attempt to enter, any private dwelling, building, or other

(continued…)

components of the statute merge. The mere demand of the person lawfully in charge to leave necessarily deprives the other party of any lawful authority to remain on the premises."[23]

Here, the trial court's findings that: (1) the McDonald's was private property; (2) SPO Chapman was lawfully in charge of the property and had the authority to ask visitors to leave; (3) SPO Chapman "stated clearly" and "repeated several times" her request for appellant to leave the property; and (4) appellant "fail[ed] to leave when directed by the special police officer to do so," are not "plainly wrong or without evidence to support [them]."[24] From these facts, a rational trier of fact viewing the evidence in the light most favorable to the government could have found the essential elements of unlawful entry beyond a

---

(…continued)

> property, or part of such dwelling, building, or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor[.]

D.C. Code § 22-3302(a)(1) (2012 Repl.).

[23] *O'Brien*, 444 A.2d at 948.

[24] D.C. Code § 17-305.

reasonable doubt.[25]

The record does not support appellant's contention that he complied with SPO Chapman's request to leave the property, or his characterization of his conduct as merely failing to depart "instantaneously upon a request to leave, before [he] even had a chance to comply." The record amply supports the trial court's contrary finding that "[i]t wasn't until the police officer arrived that either [appellant] agreed to leave or was escorted out. But, prior to that, he remained for 10 minutes after he had been told to leave by special police officer Chapman."

Nor do we agree with appellant's contention that his eventual brief departure from the McDonald's "renders the government's other evidence moot." Under the circumstances presented here, we perceive no error in the trial court's conclusion that "the fact that [appellant] was given a break and not immediately arrested at that time when he could've been," did not "preclude" Officer Thomas from arresting appellant for his failure to heed SPO Chapman's request when appellant re-entered the McDonald's approximately three to four minutes later, "especially in light of the very short period of time between when he left and when he returned."

---

[25] *Rivas*, 783 A.2d at 134.

For the foregoing reasons, the Superior Court's judgment is

*Affirmed.*