Edward GROGAN, Appellant,

v.

UNITED STATES, Appellee.

Suzane M. BEDDISCOMBE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 80–617, 80–704.

District of Columbia Court of Appeals.

Argued Aug. 19, 1981.

Decided Sept. 22, 1981.

---

James L. Kestell, Washington, D. C., appointed by this court, submitted on the brief for appellant Grogan.

Hubert H. Margolies, Washington, D. C., appointed by this court, for appellant Beddiscombe.

Diane G. Clarke, Asst. U. S. Atty., with whom Charles F. C. Ruff, U. S. Atty., and John A. Terry, John R. Fisher, and Margaret C. Poles, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, HARRIS and MACK, Associate Judges.

MACK, Associate Judge:

Appellant Grogan was convicted by a jury and appellant Beddiscombe by a court, on informations charging unlawful entry (*i.e.*, failure to vacate premises after a demand to leave had been made in violation of D.C.Code 1973, § 22–3102.[1] On these consolidated appeals, the sole issue, narrowly drawn, is the sufficiency of the evidence to show that an authorized person had demanded that appellants vacate the premises so as to bring their conduct within the second prohibition of the code provision in issue. We affirm.

The evidence of entry developed at trial is not in dispute; it will suffice to say that on a morning in August 1979, appellants and other individuals entered the Women's Medical Center, an abortion facility in the District of Columbia, through a front door bearing a sign reading "For patients, their relatives and friends. No trespassing, soliciting or distributing of literature on these premises."[2] A receptionist in the front room was told that the group wanted the clinic to stop performing abortions; some of the individuals proceeded through the clinic and beyond a door marked "Authorized Personnel, Only" to a restricted area where they locked themselves in, sat on the floor and read the Bible; others remained in the reception area, distributing literature to patients.

The government's evidence showed further that at the time of entry, approximately 8:15 a. m., the receptionist was in charge of the facility. She called the acting director of the center and, following her instructions, told the demonstrators in the reception area to leave and called the police. The police arrived at 8:35 a. m. with the building manager, who found it necessary to kick in the door to the restricted area to gain entry. There the demonstrators were told by the receptionist, the building manager, and repeatedly warned by the police, to leave. A few did, most remained. The police took no action but waited for the arrival of the center's acting director and a police photographer. The acting director arrived at approximately 8:45 a. m., told the demonstrators to leave and gave the police authority to move those who did not do so. The demonstrators remained; a police photographer arrived. After pictures of the "sit-in" were taken by the photographer, an officer, the acting director and a

---

1. D.C.Code 1973, § 22–3102 provides:

   Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building or other property, or part of such dwelling, building or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $100 or imprisonment in the jail for not more than six months, or both, in the discretion of the court.

2. Appellants entered for the avowed purpose of persuading patients and employees to restrain from activity relating to the conduct of abortions. The government established, through cross-examination, that the defendants were not patients, relatives, friends, employees etc.

news reporter, the police arrested the demonstrators (including appellants) as a group, carrying those who would not walk to the police vehicles. It was approximately 9:30 a. m. when the last demonstrator was removed.

Appellant Grogan, and other codefendants, testified at trial that the police immediately placed them under arrest when the door to the restricted area was forced in, and that no one had warned them to leave the premises prior to this time. Appellant Beddiscombe, at an "identification" hearing before the court,[3] testified that she arrived at the clinic after the others and that no one had told her to leave the premises prior to the time she was arrested. At the hearing the acting director, shown a picture taken of the "sit-in" scene, could not identify Ms. Beddiscombe's image as one of the people who was present when she had asked the group to leave. A police officer identified Ms. Beddiscombe on the picture and in the court room as one of the people sitting on the floor that the director and the police had asked to leave—one who remained in spite of warnings and who was subsequently arrested.

In this court, appellants do not contend (nor could they in light of this record and established case law) that they had a "bona fide belief" of a right to enter the clinic which would constitute a defense under D.C.Code 1973, § 22–3102. *See Gaetano v. United States*, D.C.App., 406 A.2d 1291 (1979); *Leiss v. United States*, D.C.App., 364 A.2d 803 (1976), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1977). Their sufficiency of evidence argument therefore, if it had merit, would place them in a better position only because of the wording of the information.

■ We find the evidentiary argument to be without merit. We might put aside (only for the sake of argument) the fact that the record of this case is replete with references indicating that appellant Grogan was a part of a group that was asked or warned to leave the premises by at least

five persons—any one of whom, it could be argued, had clear or apparent authority as "the lawful occupant" or the "person lawfully in charge thereof" to order departure. *See Whittlesey v. United States*, D.C.App., 221 A.2d 86 (1966). The fact would still remain that, despite the claimed ambiguities alluded to by appellant Grogan, the government's evidence provides more than an ample basis from which a reasonable person could conclude, beyond a reasonable doubt, that the acting director of the clinic, either personally or through an agent, ordered Grogan to leave the premises. The evidence must be viewed in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact. *Womack v. United States*, D.C.App., 350 A.2d 381 (1976). In order for a conviction to be sustained on appeal, the evidence need only be enough to show that reasonable persons could find guilt beyond a reasonable doubt. *Beck v. United States*, D.C.App., 402 A.2d 418, 422 (1979).

In like vein, the argument of the appellant Beddiscombe is no more meritorious. The short answer to her contention is that the trial court specifically found that, while she entered the premises "shortly after" some of the others, she was asked by officers and by the acting director to leave and declined to do so. While the trial court acknowledged that there was some conflict in testimony as to whether Ms. Beddiscombe was present when the acting director personally asked the group to leave, the court, as the trier of fact, resolved that conflict against appellant by assessing the credibility and weight of the testimony. The court's resolution in this regard is neither wrong nor unsupported and we will not disturb it. *See In re A.B.H.*, D.C.App., 343 A.2d 573, 575 (1975); D.C.Code 1973, § 17–305(a).

■ Finally, appellant Beddiscombe's argument that First Amendment considera-

---

3. In waiving a trial by jury, appellant Beddiscombe agreed that evidence at the jury trial of her codefendants would provide the evidentiary record for the court's consideration.

tions alter evidentiary requirements in this case, is best answered by our holding in *Gaetano, supra.* There, in affirming convictions for unlawful entry, we noted (at 406 A.2d 1295):

> The rights to free speech, to assembly, and to petition the government for grievances are a cornerstone of the American system. So, too, is the right to be free from criminal interference.

*Affirmed.*