**Alan A. WOLL, Joseph Fitzpatrick, Julianne Loesch, John O'Keefe, Dennis Hartford, Charles Hamm, Ronald Harbour, Pam Yaksich, Christyanne Collins, and Thomas Venditti, Appellants,**

v.

**UNITED STATES, Appellee.**

**Nos. 88–659, 88–661 to 88–669.**

District of Columbia Court of Appeals.

Submitted Jan. 25, 1990.
Decided Feb. 28, 1990.

---

Richard L. Swick and Patrick G. Senftle, Washington, D.C., were on the brief for appellants.

Jay B. Stephens, U.S. Atty., and John R. Fisher, Teresa L. McHenry, and Mary E. McLaren, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before BELSON and TERRY, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge:

Appellants, a group of anti-abortion protestors, were convicted of unlawful entry[1] for refusing to leave an office building when directed to do so. They challenge their convictions with the claim that the owner of a private medical clinic which occupied a portion of the building lacked authority to require them to leave the corridor outside the clinic's suite of offices. We reject appellants' argument and affirm the convictions.

I

On January 22, 1988, the fifteenth anniversary of the Supreme Court's decision in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), appellants entered the Metropolitan Medical Building, a private office building in downtown Washington. They went up to the third floor and congregated in a corridor outside the entrance to the New Summit Medical Center ("the Center"), a clinic where abortions are performed. There they distributed literature, attempted to dissuade patients from having abortions, and impeded patients seeking to enter and leave the Center. Appellants remained in the corridor and never entered the Center itself.

The owner of the Center, Laly Maria Torres, leased the Center's suite of offices from the limited partnership which owned the building. Her lease[2] gave her the right to use the corridor and all other common areas[3] "in common with Landlord, any designee of Landlord, and any other tenants of the Building," and to permit its patients and employees to use those parts of the building for ingress to and egress from the Center. The lease also gave the landlord (but not the tenant) the right to close "all or any portion [of the common areas] temporarily to discourage non-patient use...."

Several members of the Metropolitan Police were also at the Center that morning. Shortly after appellants' arrival, Mrs. Torres asked the police to order them to leave the corridor. At Mrs. Torres' request, Sergeant Richard Getz informed appellants several times that they would have to leave, and when they refused to do so, they were arrested.[4] There was no evi-

---

1. D.C.Code § 22–3102 (1989).

2. A copy of the lease was introduced into evidence and has been made part of the record on appeal.

3. The lease defines "common areas" to include "all corridors, entranceways and exits, access areas, loading areas, lobbies, plazas, elevators and stairways in the Building...."

4. Appellants acknowledged in a stipulation that they were present and arrested in the corridor.

dence that any representative of the landlord (the partnership which owned the building) was involved in the decision to remove appellants from the corridor. The only other office on the third floor was a dentist's office, which was not open when these events were occurring.

## II

The sole question presented on appeal is whether Mrs. Torres possessed legal authority to have a police officer demand that appellants leave the corridor outside her clinic. In pertinent part, D.C.Code § 22–3102 provides:

Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of *the person lawfully in charge thereof,* shall be deemed guilty of a misdemeanor.... [Emphasis added.]

The issue which we must decide is one of statutory construction: whether Mrs. Torres, as the lessee of the clinic, was "the person lawfully in charge" of the corridor leading to the clinic so that she, acting through Sergeant Getz as her agent, could demand that appellants leave the corridor. We hold that she was.[5]

Ever since *Whittlesey v. United States,* 221 A.2d 86, 89 (D.C.1966), it has been settled law that there can be more than one "lawful occupant" or "person lawfully in charge" of a building or other premises, as those terms are used in the unlawful entry statute. In *Whittlesey* a group of demonstrators, who had entered the White House during the regular visiting hours, sat down in a corridor and blocked the passage for other tourists. The commanding officer of the White House Police told them to move, and when they refused to get up, they were arrested. On appeal from their convictions

of unlawful entry, they contended *inter alia* that only the President was the "lawful occupant" or "person lawfully in charge" of the White House. This court rejected their argument as "highly unreasonable" and held that the police commander, "responsible for the security of the building, clearly had authority to order appellants to leave when they violated the regulations respecting visitors at the White House." *Id.* at 89. We also expressly approved a jury instruction which said "that a person may be lawfully in charge even though there are other persons who could, if they chose to do so, countermand or override his authority." *Id.* at 91.

We have applied these principles in several cases in the years since *Whittlesey* was decided. For example, in *Smith v. United States,* 445 A.2d 961 (D.C.1982) (en banc), we rejected the argument that there was only one police officer lawfully in charge of the White House. Finding "no reason to limit *Whittlesey* narrowly to its facts," we held that the senior Secret Service officer on the scene was "empowered as the lawful occupant" to demand that the defendants, a group of demonstrators, leave the premises. *Id.* at 964. Similarly, in a case involving private rather than public property, a restaurant patron was arrested when she refused to leave after the manager told her to do so. She sued for false arrest, but the trial court granted a directed verdict in favor of the restaurant at the conclusion of the plaintiff's case. We affirmed that decision, holding that "when appellant, in the presence of the police officer, refused to leave on the demand of the restaurant manager, the officer was justified in arresting her for violation of the unlawful entry statute." *Feldt v. Marriott Corp.,* 322 A.2d 913, 916 (D.C. 1974). Although the manager's authority (as opposed to the owner's) to ask the customer to leave was not expressly discussed, it is clear that the judgment could not have been affirmed if there were any doubt about that authority.

---

**5.** We therefore need not decide the related but separate issue of whether she was also the "lawful occupant" of the corridor, as that term is used in the statute.

In a case with facts similar to those at bar, *Grogan v. United States*, 435 A.2d 1069 (D.C.1981), the defendants were convicted of unlawful entry of an abortion clinic. The evidence showed that a receptionist, the clinic's acting director, the building manager, and two police officers demanded that they leave, but that they refused to go and were arrested. In affirming their convictions, we held that even though the owner of the clinic was not present, "any one of [these five persons], it could be argued, had clear or apparent authority as 'the lawful occupant' or the 'person lawfully in charge thereof' to order departure." *Id.* at 1071 (citing *Whittlesey*). We also recognized that the person in charge may act "either personally or through an agent" in ordering someone to leave. *Id.; accord, Hemmati v. United States*, 564 A.2d 739, 746 n. 14 (D.C.1989).

From this line of cases we can distill several principles: first, that more than one person can have the authority to order someone to leave either public or private premises (*Whittlesey* and *Grogan*); second, that reasonableness is a factor in determining such authority (*Whittlesey* and *Smith*); third, that someone lacking a possessory interest in the property (*e.g.*, the receptionist in *Grogan*) may have such authority; and fourth, that the person in charge may act through an agent in ordering someone to leave (*Grogan* and *Hemmati*, and by implication *Feldt*). We therefore reject, as contrary to ample precedent, appellants' contention that only Mrs. Torres' landlord had the legal authority to order their removal from the building.[6]

Focusing on the language of the lease, appellants maintain nevertheless that Mrs. Torres had only a license to use the corridor and to permit the Center's patients to do so. From this premise they conclude that, as a mere licensee, Mrs. Torres had no right to exclude them from the corridor. We cannot agree. Notwithstanding the terms of the lease, it could be argued that what Mrs. Torres had was not a license but an easement of access and exit. *See* 49 AM.JUR.2D *Landlord and Tenant* § 199 (1970). We need not delve into the niceties of real property law, however, to decide whether Mrs. Torres had a property interest in the corridor, for ultimately that does not matter. What the lease unequivocally gives her is the right to *use* the corridor and to allow the Center's patients and employees to use it as well. Following the dictates of *Whittlesey* and *Smith* that we should construe the unlawful entry statute reasonably, we hold that Mrs. Torres' right to the use of the corridor is sufficient to bring her within the meaning of "person lawfully in charge thereof," as that term is used in D.C.Code § 22–3102. The fact that the lease expressly gives the landlord the right to "close all or any portion [of the common areas] temporarily to discourage non-patient use" does not mean that Mrs. Torres had no right to ask appellants to leave the corridor. As *Whittlesey* teaches, Mrs. Torres "may be lawfully in charge even though there are other persons who could, if they chose to do so, countermand or override [her] authority," for "there may be more than one person who has the authority to order a removal." 221 A.2d at 91.[7]

The convictions of all ten appellants are therefore

*Affirmed.*

---

**6.** Appellants make no contention that Mrs. Torres could not act through Sergeant Getz as her agent.

**7.** This case does not present, and we do not decide, any issue involving a disagreement over access to the corridor between two tenants of the same building. For example, if Tenant A gave permission to a group of strangers to occupy the corridor while Tenant B wanted them to leave, the outcome of their dispute—and the fate of the strangers—might well depend on the exact terms of the tenants' leases and their respective rights under those leases to the use of the corridor. We leave the resolution of such problems to another day.