David C. SOBELSOHN, Appellant,

v.

AMERICAN RENTAL MANAGEMENT
COMPANY, Appellee.

No. 03–CV–1441.

District of Columbia Court of Appeals.

Argued Jan. 10, 2006.

Decided May 31, 2007.

David C. Sobelsohn, pro se.

Joanne Sgro, Washington, DC, for appellee.

Before FISHER, Associate Judge, and STEADMAN and SCHWELB,* Senior Judges.

STEADMAN, Senior Judge:

Before us is a small claims appeal by an aggrieved tenant. At the time in question, appellant David Sobelsohn had been for some ten years the lessee of an eighth-floor penthouse apartment, including a large private outdoor patio or "roof deck," in a 328–unit apartment building at 201 Eye Street, Southwest, managed by appellee American Rental Management Company (ARMC). For several months, ARMC was engaged in major repair and improvement work on other parts of the apartment building, notably lower-floor balconies. During the course of that work, the noise levels in his apartment during weekday daytime hours became "intense." Furthermore, ARMC made use of Sobelsohn's roof deck in various ways to secure scaffolding with cables and to store equipment.

Sobelsohn brought a small claims action against ARMC seeking damages for the interference with his full use of the leased apartment and roof deck.[2] After a bench

---

* Judge Schwelb was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on June 24, 2006.

2. Sobelsohn sought the statutory limit of $5,000, within which the Small Claims and Conciliation Branch has exclusive jurisdiction. D.C.Code § 11–1321 (2001). The case was "transferred" to a Superior Court judge when the defendant refused to consent to trial by a magistrate judge, as it had a right to do. See D.C.Code § 11–1732(j)(5) (2001). We do not understand the action to have been certified to the Civil Division because "the interests of justice so require," see D.C.Code § 11–1323(b) (2001); Super. Ct. Sm. Cl. R. 8, but rather that the action remained one in small claims and subject to its rules, including the requirement that the judge "shall conduct the trial in such manner as to do substantial justice between the parties according to the rules of substantive law, and is not bound by the statutory provisions or rules of practice,

trial,[3] the court ruled that while the noise level may have been intense, as Sobelsohn claimed, and ARMC may indeed have intruded to some extent on the patio, Sobelsohn was entitled to no relief of any kind under controlling legal principles. He filed an application for allowance of appeal with this court, which we granted. We conclude that the trial court too narrowly construed the legal doctrines upon which Sobelsohn might have established ARMC's liability and remand the case for further proceedings.

## I. General Legal Principles

Traditionally, at common law, the essence of the landlord-tenant relationship was the delivery by the landlord to the tenant of the possessory rights to the leased property for the term of the lease. The only implied obligation of the landlord was under the implied "covenant of quiet enjoyment," essentially a covenant of title, which assured the tenant that his possessory interest would not be invaded by the landlord or by anyone with rights superior to those of the landlord. Thus, the lease was viewed as essentially a property transaction, a conveyance of an interest in land.

■ In the seminal case of *Javins v. First Nat'l Realty Corp.*, 138 U.S.App. D.C. 369, 428 F.2d 1071, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970), a case binding on us,[4] this traditional approach was swept aside. The court recognized the reality that "[w]hen American city dwellers, both rich and poor, seek 'shelter' today, they seek a well known package of goods and services—a package which includes not merely walls and ceilings, but also adequate heat, light and ventilation, serviceable plumbing facilities, secure windows and doors, proper sanitation, and proper maintenance." *Id.* at 372, 428 F.2d at 1074 (footnote omitted). Hence, the court held, "leases of urban dwelling units should be interpreted and construed like any other contract." *Id.* at 373, 428 F.2d at 1075. Fundamental to contract interpretation is the task of protecting the legitimate expectations of the parties as reflected in the contract terms, the circumstances under which the contract is made, and the relevant statutes and regulations pertaining to such contracts. "Contract principles established in other areas of the law provide a more rational framework for the apportionment of landlord-tenant responsibilities...." *Id.* at 378, 428 F.2d at 1080.

■ In *Javins*, the court held that an implied warranty of habitability would be read into every residential lease. *Id.* Dealing in that case with an implied obligation to repair, the court ruled that the warranty would be measured by the requirements of the Housing Code imposing repair obligations upon the landlord in such circumstances. *Id.* at 379–80, 428 F.2d at 1081–82. The same court shortly thereafter was willing to find other implied covenants by the landlord arising from the circumstances of a leasehold. *See Kline v.*

procedure, pleading, or evidence, except provisions relating to privileged communications." D.C.Code § 16–3906(b) (2001). The case was brought to this court by an allowance of appeal, a procedure applicable to small claims proceedings. D.C.Code § 11–721(c) (2001). Although ARMC was the managing agent and not the landlord itself, no issue is raised as to its liability as if it were the landlord.

3. Sobelsohn represented himself, but it appears that he had legal training.

4. *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971). We have cited and followed *Javins* in numerous cases. *See, e.g., Anderson v. District of Columbia Hous. Auth.*, 923 A.2d 853, 858 (D.C.2007); *Pinzon v. A & G Props.*, 874 A.2d 347, 350 (D.C.2005); *Cowan v. Youssef*, 687 A.2d 594, 598 (D.C.1996).

*1500 Massachusetts Ave. Apartment Corp.,* 141 U.S.App. D.C. 370, 378, 439 F.2d 477, 485 (1970) ("there is implied in the contract between landlord and tenant an obligation on the landlord to provide those protective measures which are within his reasonable capacity").

Even if the warranty of habitability is limited to issues involving the physical condition of the premises, the obligation has been recognized that a landlord will not act in other ways that interfere unreasonably with permissible uses of the leased premises. RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT § 6.1 (1977), expounds the principle in this manner:

> Except to the extent the parties to a lease validly agree otherwise, there is a breach of the landlord's obligations if, during the period the tenant is entitled to possession of the leased property, the landlord, or someone whose conduct is attributable to him, interferes with a permissible use of the leased property by the tenant.

Included as examples of such breaches are unauthorized possession of part of the premises and excessive noise in common areas. *Id.* at § 6.1 cmt. b.

With this general background, we examine first the claim for damages relating to the noise and then the claim relating to the use of the roof deck.

## II. Construction Noise

At trial, Sobelsohn argued that he was entitled to compensation for the loud drilling noise during daytime hours that he had to endure for three months, noise that was especially vexing to him because he often worked at home during the day. He introduced into evidence an audiotape that was made inside his apartment. The trial court also heard from two witnesses, Kevin Fitzgerald and Antonio Gonzales, who corroborated the fact that the drilling noise was so loud in Sobelsohn's apartment that it was not possible to conduct daily activities such as talking on the phone or listening to the radio.

In its judgment, the trial court stated that it fully accepted the testimony as to the "loud and obnoxious nature of the noise" and that it was "every bit as bothersome as the plaintiff contended." However, it analyzed Sobelsohn's noise complaint solely as a claim of the breach of the covenant of quiet enjoyment. First, the trial court pointed out that Sobelsohn's use of the term "breach of the covenant of quiet enjoyment" was very literal. Citing our decision in *Weisman v. Middleton,* 390 A.2d 996, 1001 (D.C.1978), observing that the covenant of quiet enjoyment only relates to possession, the trial court held that Sobelsohn was not entitled to any relief because he never vacated the premises as a result of the noise.

As already mentioned, the so-called covenant of quiet enjoyment was basically a property concept, focusing on the grant of the possessory interest. Absent departure from the premises, a tenant has great difficulty in claiming a "constructive eviction" equivalent to the actual physical interference with his possessory rights. But the trial court's view of Sobelsohn's claim was, in our view, too narrowly focused. In his amended complaint, Sobelsohn put his case in far more general terms. We think he was entitled to a consideration of his claim on general contractual principles as set forth in *Javins.*

■ Undoubtedly a tenant may expect a certain amount of peace and quiet in renting an apartment unsullied by unreasonable acts of the landlord. Sobelsohn's lease itself reflects such a general expectation in the operation of the apartment house. The landlord's rules and regulations attached to the lease included a

requirement that the "Tenant may not make or permit any disturbing noises which will unreasonably interfere with the rights, comforts, or convenience of other Tenants. Tenant must keep the volume of any radio, television or musical instrument in his apartment sufficiently low at all times so as not to disturb other Tenants in the building." On the other hand, any tenant in a large urban residential building must be aware that, among other things, the normal required upkeep, maintenance and improvement of the building will from time to time subject him to noise levels of unusual intensity. Indeed, in the District, extensive regulations exist dealing with the amount of noise that is permitted for various activities, including limitations on the time of day in which certain levels of noise are permitted. 20 DCMR ch. 27 ("Noise Control") (1997). These regulations would provide a reasonable basis for determining the level of noise the landlord or those whose conduct is attributable to him may make consistent with his leasehold obligations. "[B]y signing the lease the landlord has undertaken a continuing obligation to the tenant to maintain the premises in accordance with *all* applicable law." *Javins, supra,* 138 U.S.App. D.C. at 379, 428 F.2d at 1081 (emphasis added).

In focusing on the "covenant of quiet enjoyment," the trial court prevented Sobelsohn from introducing evidence from an engineer as to the decibel meter readings that were made in his apartment. Furthermore, there was no investigation into the question of whether the noise levels

were capable of being reasonably abated in any way, much less whether any violation of applicable regulations was involved. The crucial inquiry should be into the reasonableness in expectations and performance on both sides, and not limited to the sterile question whether a violation of a common-law covenant dealing essentially with title had occurred.

## III. Use of Roof Deck

■ At trial, Sobelshon testified that for approximately three months, he was unable to make full use of his roof deck[5] because ARMC had utilized it in two ways: first, to support scaffolding that was used to make repairs to the balconies on lower floors of the apartment building; and second, to store various types of construction equipment on it. Sobelsohn presented photographs of his roof deck that showed the construction and scaffolding equipment.[6]

■ The trial court ruled that a provision of the lease giving the landlord a right of entry to the apartment authorized this utilization of the roof deck by ARMC. The relevant lease provision, headed "Access by Landlord," read:

Landlord has access to, and may enter the apartment of Tenant in order to inspect the apartment, make necessary or agreed-to repairs, alterations or improvements, perform pest exterminations, supply necessary or agreed services; and to exhibit the apartment to prospective or actual purchasers, mort-

---

5. Sobelsohn testified that during the winter he routinely used his deck for storing cold beverages and allowed his guests to smoke on the roof deck, as well as making use of the space in other ways. He asserted that the scaffolding and cables remained on his roof deck for roughly three months, beginning in early March.

6. Following Sobelsohn's terminology, the trial court construed his claim as one of trespass by ARMC, a concept better fitted to invasion of one's property by a stranger. In the landlord-tenant context, as discussed *infra,* the covenant of quiet enjoyment normally provides the basis for a tenant's claim of unauthorized invasion of a tenant's possessory interest.

gagees, lessees, workmen, contractors, or other proper persons as so designated by Landlord. Landlord agrees to give prior notice when possible and enter at reasonable times, except in cases of emergency or abandonment, or when a work request has been issued by the Tenant.

As *Javins* indicates, "leases of real property are to be construed as contracts." *Capital City Mortgage Corp. v. Habana Village Art & Folklore, Inc.*, 747 A.2d 564, 567 (D.C.2000) (citations omitted). This jurisdiction adheres to an "objective" law of contracts, meaning that "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties ... unless the written language is not susceptible of a clear and definite undertaking...." *DSP Venture Group, Inc. v. Allen*, 830 A.2d 850, 852 (D.C.2003) (citation and internal quotation marks omitted).[7] "Contractual language is ambiguous if it is susceptible to more than one reasonable interpretation.... The general rule for contract interpretation is that if a contract is determined by the court to be ambiguous, then external evidence may be admitted to explain the surrounding circumstances and the position and actions of the parties at the time of contracting. The ultimate interpretation then becomes a question for the finder of fact." *Rivers & Bryan, Inc. v. HBE Corp.*, 628 A.2d 631, 635 (D.C. 1993) (citing *Howard Univ. v. Best*, 484 A.2d 958, 966–67 (D.C.1984); *Rich v. Sills*, 130 A.2d 920, 922 (D.C.1957)).

Here, we think the trial court reasonably found that the "apartment" mentioned in the provision included the private roof deck, which appears to have been an integral subject of the lease agreement. We also agree that the provision can be read in the context of the apartment being a component unit of a large integrated structure, and that the "repairs, alterations, or improvements" referred to are not confined to repairs of the immediate apartment itself. But the provision also limits itself to what is "necessary or agreed-to," a concept that, along with reasonableness, permeates all aspects of the provision. Thus, to rely upon this provision to authorize its use of the roof deck, ARMC was obligated to show that the use of the roof deck to secure the scaffolding was reasonably necessary in order to repair the lower-floor balconies. Likewise, ARMC was obligated to show that the use of the roof deck to store the construction equipment was a reasonable necessity in the repair work. Sobelsohn fairly asserts that the trial record is essentially barren of such evidence.[8]

The key concept is that a tenant in a multi-unit apartment building can expect intrusions of reasonable duration on his premises when reasonably required to maintain the building as a whole. Indeed, such a right in the landlord may well exist in certain circumstances even in the absence of a lease provision. *See Dunnington v. Thomas E. Jarrell Co.*, 96 A.2d 274 (D.C.1953) (landlord had implied right to re-enter premises to make necessary repairs in a rent-controlled building). As with other contracts, a residential lease must be interpreted to carry out the reasonable expectations of the parties. To the extent that ARMC's intrusions here were reasonably necessary to the comple-

---

7. Other exceptions exist where there is fraud, duress, or mutual mistake. *Id.*

8. Sobelsohn asserts to us that his witness, an engineer, was prepared to testify about alternative construction methods which the trial court declined to hear, albeit in the context of a discussion about damages. The record does contain evidence that the bad condition of the balconies made their repair necessary.

tion of needed repairs to the lower-floor balconies and did not unreasonably interfere with the use of the roof deck by Sobelsohn, they were authorized by the lease.

However, unless authorized by the express or implied terms of the leasehold arrangement, the traditional common-law view that a lease is a conveyance of the possessory interest that the landlord may not invade without breaching the covenant of quiet enjoyment retains its relevance. That covenant, embodied in the above-cited § 6.1 of the RESTATEMENT OF PROPERTY, continues to be implied in residential leases, albeit not necessarily with the technical baggage that accompanied it at common law. Hence, Sobelsohn would be entitled to damages from ARMC for any unnecessary or unreasonable use that it made of the roof deck.[9]

We conclude that Sobelsohn is entitled to a new trial in which all parties are afforded the opportunity to present the full range of evidence in light of the legal principles set forth above. The judgment of the trial court is therefore reversed and the case remanded for further proceedings in accordance with this opinion.[10]

*Reversed and remanded.*

9.  The trial court stated that even if Sobelsohn prevailed on any of his claims, he had not proven any damages. As indicated, however, the trial court took a limited view of the basis for Sobelsohn's claims, and the damages issue should be re-examined after a new trial.

10.  Sobelsohn also argues that ARMC did not give him "prior notice" of its intent to utilize *the roof deck as required by the lease provi-* sion. The trial court found that the general

notice given to all tenants about the repair project was sufficient, a factual determination with which we do not quarrel. In any event, Sobelsohn makes no convincing case that he suffered any significant damage from the absence of notice. Sobelsohn also sought damages for the alleged conversion of a chair that was on the roof deck, a claim permissibly rejected by the trial court on the evidence presented, and which in any event was de minimis.