*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CM-386

NIJAE ODUMN, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-21732-17)

(Hon. Patricia A. Broderick, Trial Judge)

(Argued November 18, 2019                    Decided May 27, 2020)

*Omar M. Bississo* for appellant.

*Kristina L. Ament*, Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman* and *Brian Ganjei*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, GLICKMAN, *Associate Judge*, and STEADMAN, *Senior Judge*.

BLACKBURNE-RIGSBY, *Chief Judge*:  Appellant, Nijae Odumn, was convicted of unlawful entry on property, D.C. Code § 22-3302 (2012 Repl.), when he was arrested at an apartment complex, from which he had previously been banned by the apartment complex owner.  Appellant challenges the sufficiency of the evidence

underlying that conviction, arguing that he was on the property at the invitation of a tenant, his aunt, at the time of his arrest. On this issue of first impression, we hold that a tenant's guest may not be convicted of unlawful entry when that guest enters the property at a tenant's invitation for a lawful purpose and reasonably uses common space for egress and ingress, regardless of the landlord's intent to bar that guest from the property. Because the evidence demonstrated that appellant entered the apartment complex at the invitation of a tenant, his aunt, and was apprehended in the common area while leaving the complex, and because the government introduced no evidence that the path used by appellant was not a reasonable means of egress from the property, the government failed to prove an essential element of unlawful entry beyond a reasonable doubt, that he entered property "against the will of the lawful occupant or of the person lawfully in charge thereof." D.C. Code § 22-3302(a)(1). Therefore, we reverse.

## I.

The evidence at trial was largely undisputed. Konrad Olszak, an off-duty Metropolitan Police Department detective working as a part-time security officer at the Washington View Apartments, testified that on the evening of February 11, 2017, he issued a verbal barring notice to appellant barring him from the Washington

View Apartments because he had been at the apartment complex "loitering nonstop," hanging around the building and not visiting anyone. On March 2, 2017, Detective Olszak again encountered appellant on the property, and he reminded appellant that he was barred. In the exchange, captured in body-worn camera footage that was viewed by the trial court, appellant told Detective Olszak that he did not know he was barred, and Detective Olszak responded, pursuant to the February 11 barring notice, "[Y]ou're barred."[1]

Wanda Pratt, appellant's aunt, testified that she moved into the Washington View Apartments on December 9, 2017, and had several of her family members, including appellant, assist her with moving; she did not know that appellant had previously been told that he was barred. Ms. Pratt testified that she was authorized to have guests at her apartment, and she never made any contrary agreement with the property management.[2] That evening, appellant went to the Washington View Apartments' rental office to get Ms. Pratt's keys and later helped unload her belongings from a truck into her apartment. After unloading the truck, appellant

---

[1] During the March 2 encounter, Detective Olszak was accompanied by an on-duty MPD officer, not employed by the apartment complex, who was wearing a body-worn camera.

[2] Neither party sought to admit Ms. Pratt's lease into evidence, and it is not a part of the record on appeal.

departed with his brother to walk home. Ms. Pratt testified to her understanding that, on the "way . . . home[,] they were stopped by police officers."

Officer Felix Lina – another off-duty MPD officer working as part-time security – testified that, on the evening of December 9, 2017, he was sitting in his patrol car when he saw appellant walking in the Washington View Apartments' parking lot. Officer Lina knew appellant from prior encounters and knew appellant had been barred from the property. As Officer Lina drove his car out of the parking lot in appellant's direction, appellant noticed him, changed directions, and walked the other way. Officer Lina stopped appellant, at which point appellant told Officer Lina that his aunt had just moved into the property and that he was "helping her out." Officer Lina neither verified appellant's statement nor ascertained whether his aunt was indeed a tenant, but rather placed him under arrest for unlawful entry in violation of the barring notice.

The trial court found appellant guilty of unlawful entry. The parties argued, and the trial judge agreed, that the only relevant question was whether appellant "had a reasonable belief that he had reason to be there, permission to be there."[3] The trial

---

[3] Proof of a defendant's reasonable, bona fide belief to enter property is an affirmative defense to unlawful entry. *See Ortberg v. United States*, 81 A.3d 303, 308-09 (D.C. 2013).

judge concluded that she did "not find that he does." The trial court found that appellant "showed a very guilty mind" when he immediately changed directions upon observing Officer Lina. The court noted that appellant did not tell his aunt – whose testimony it found credible – that he was barred, suggesting he was using her move as an excuse to reenter the property. The trial court highlighted that when apprehended, appellant was not walking toward his aunt's house, carrying any moving items, or near the building in which his aunt's unit was located. This appeal followed.

## II.

The proper construction of a statute is a legal question that this court reviews de novo. *See Rahman v. United States*, 208 A.3d 734, 738 (D.C. 2019). The first step in statutory interpretation is to determine if the statute's "language is plain and admits of no more than one meaning." *Peoples Drug Strs., Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (quoting *Davis v. United States*, 397 A.2d 951, 956 (D.C. 1979)). Even if the words of a statute have "superficial clarity," the court may look beyond plain meaning (1) where "a review of the legislative history or an in-depth consideration of alternative constructions that could be ascribed to statutory language . . . reveal[s] ambiguities that the court must

resolve;" (2) where "the literal meaning of [the] statute . . . produces absurd results;" (3) so that, "whenever possible, the words of the statute are . . . construed to avoid obvious injustice;" or (4) in order "to effectuate the legislative purposes, as determined by a reading of the legislative history or by an examination of the statute as a whole." *Id.* at 754 (internal citations and quotation marks omitted); *see also Dobyns v. United States*, 30 A.3d 155, 159 (D.C. 2011) (same). In reading a statute, we are mindful of the canon that no statute should "be construed as altering the common law, farther than its words import," a rule creating a rebuttable presumption that the legislature has not intended "any innovation upon the common law which it does not fairly express." *Monroe v. Foreman*, 540 A.2d 736, 739 (D.C. 1988).

We review the sufficiency of the evidence de novo. *Nero v. United States*, 73 A.3d 154, 157 (D.C. 2013). In a bench trial, we accept the trial court's factual findings unless they are "plainly wrong or without evidence to support them." *Rahman*, 208 A.3d at 738. We deem proof of guilt sufficient if, viewing the evidence in the light most favorable to the government, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 738-39.

**III.**

Because a lawful occupant of the Washington View Apartments – Wanda Pratt, a tenant – invited appellant onto the premises, appellant argues that the government failed to prove an essential element of unlawful entry: that he entered the property against the will of the lawful occupant or of the person lawfully in charge. This argument requires us to interpret the District's unlawful entry statute, which provides, in relevant part:

> Any person who, without lawful authority, shall enter, or attempt to enter, any private dwelling, building, or other property, or part of such dwelling, building, or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, . . . shall be deemed guilty of a misdemeanor . . . .

D.C. Code § 22-3302(a)(1). Thus, the disjunctive language of the statute allows the government to prove unlawful entry if entry is "against the will of the lawful occupant *or* of the person lawfully in charge thereof." *Id.* (emphasis added). *See also Ortberg*, 81 A.3d at 307 (holding that one element of unlawful entry is that the government must prove that the defendant's entry was "against the will of owner *or* lawful occupant" of the property (emphasis added)).

**Statutory Language**

While it is "settled law that there can be more than one 'lawful occupant' or 'person lawfully in charge' of a building or other premises," *Woll v. United States*, 570 A.2d 819, 821 (D.C. 1990); *id.* at 821-22 (analyzing cases), this court has not yet determined how to resolve a conflict that arises when a person enters property consistent with the wishes of one owner or lawful occupant, but contrary to the wishes of another owner or lawful occupant. *See id.* at 822 n.7 (declining to reach "issue involving a disagreement over access to [a shared] corridor between two tenants of the same building"). This case requires us to decide that question, specifically in the context of a landlord-tenant relationship.

The statute's plain language could be read to permit a conviction for unlawful entry in a situation in which one occupant or owner prohibits an individual from entering property, despite that person being expressly invited onto the property by another occupant or owner. Considering alternative constructions of the apparent plain meaning of the statute, however, reveals ambiguities that the court must resolve. *See Peoples Drug Strs.*, 470 A.2d at 754. What happens when property is controlled by both a lawful owner and a person lawfully in charge, e.g., a landlord and tenant, who disagree over whether a third party may enter or remain on

property? Or by two lawful owners? Or by two persons lawfully in charge, e.g., two tenants? Such a literal interpretation of the words of the statute would also lead to an obvious injustice, whereby the statute grants a right to one individual with a shared property interest that supersedes the right of another individual with an equal (if not greater) interest in the property. *Id*.; *see also Woll*, 570 A.2d at 822 (noting that "reasonableness is a factor in determining" whether "more than one person can have the authority to order someone to leave either public or private premises"). Because of this ambiguity, we turn to other interpretive tools to understand the legislative intent.

**Legislative History**

A review of the statute's legislative history provides little clarity to this disjunctive phrase. Originally enacted in 1901, the District's unlawful entry statute only criminalized entry into a "private dwelling against the will of the lawful occupant." An Act to Establish a Code of Law for the District of Columbia, ch. 854, 31 Stat. 1189, 1324 (1901). In 1935, Congress amended the statute to distinguish between occupied and unoccupied dwellings because the law, in its then-current form, provided no protection "against squatters in vacant houses." S. Rep. No. 74-8, at 2 (1935). As a result, the statute criminalized a person who entered a "private

dwelling or building against the will of the *lawful occupant* thereof," or "an *unoccupied* private dwelling or building against the will or consent of the *lawful owner* thereof." Act of Mar. 4, 1935, Pub. L. No. 74-23, ch. 23, 49 Stat. 37 (1935) (emphasis added). Thus, occupants had the right to bar entry to occupied private dwellings, while owners only had the right to bar entry to unoccupied private dwellings.

In 1952, Congress again amended the statute, this time broadening the statute to include both public property and property other than dwellings and buildings. *See generally* H.R. Rep. No. 1758 (1952). In so doing, it altered the relevant language to its current form:

> Any person who, without lawful authority, shall enter, or attempt to enter, *any public or private dwelling, building or other property, or part of such dwelling, building or other property, against the will of the lawful occupant or of the person lawfully in charge thereof*, or being therein or thereon, without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor . . . .

Act of July 17, 1952, Pub. L. No. 82-588, ch. 941, § 1, 66 Stat. 766 (1952) (emphasis added). In this amendment, Congress added protections for public property, ensuring protections for property owned by the United States and the District of

Columbia. H.R. Rep. No. 1758, at 1. It also broadened the scope of the statute to property "other than dwellings and buildings," including "open areas such as yards, gardens, and automobile parking lots." *Id.* at 2. However, the legislative history is silent as to the reason why Congress changed the structure of the statute's language to create the disjunctive association between lawful occupant and person lawfully in charge. One reason may be that Congress decided to rid the statute of its distinction between occupied and unoccupied buildings. The other may have been as a result of efforts to simplify the statute and make stylistic changes: the 1952 version, despite adding protections, is thirty words shorter in relevant part than the 1935 version. Neither of these possible explanations, however, clarify the rights between occupants and owners.

While the Council of the District of Columbia has amended the statute multiple times since then, it has not changed the relevant language.[4] Thus, from this legislative history, we cannot discern any legislative intent regarding the shared authority – between a "lawful occupant" and a "person lawfully in charge" of

---

[4] *See* Omnibus Public Safety Amendment Act of 2006, D.C. Law 16-306, § 219, 53 DCR 8610 (Apr 24, 2007) (adding language concerning vacant buildings); Omnibus Public Safety and Justice Amendment Act of 2009, D.C. Law 18-88, § 215, 56 DCR 7413 (Dec. 10, 2009) (adding stylistic changes, changing penalty, defining "private dwelling," and creating subsection (b) concerning public buildings); Criminal Fine Proportionality Amendment Act of 2012, D.C. Law 19-317, § 201(h), 60 DCR 2064 (June 11, 2013) (changing penalty).

property – to invite or prohibit the entry of another individual under § 22-3302(a)(1). Importantly, we cannot, from this legislative history, discern an express or implied legislative intent to permit a landlord to bar a tenant's guest.

**Common Law Principles**

Mindful that the legislature does not change the common law unless it fairly expresses such intent to do so, *see Monroe*, 540 A.2d at 739, we review the common law and general principles of the landlord-tenant relationship – the circumstances relevant here – to determine the scope of the statute.

At common law, the "essence of the landlord-tenant relationship was the delivery by the landlord to the tenant of the possessory rights to the leased property for the term of the lease," i.e., a property transaction conveying an interest in land. *Sobelsohn v. Am. Rental Mgmt. Co.*, 926 A.2d 713, 715 (D.C. 2007); *see also Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1060 n.8 (D.C. 2014) ("[I]t is well settled that a tenant, while not a property owner, [is] a purchaser of an estate and entitled to exclusive legal possession of the leased property." (internal quotation marks omitted)). Thus, "[p]roperty law regards a lease as equivalent to a sale of the premises for the term of the lease, making the tenant both owner and occupier

during the lease."  49 Am. Jur. 2d *Landlord and Tenant* § 390 (2020); *see also Young v. District of Columbia*, 752 A.2d 138, 144 (D.C. 2000) ("[A] tenant is a purchaser of an estate, entitled to exclusive legal possession . . . ." (quoting *Beall v. Everson*, 34 A.2d 41, 41 (D.C. 1943)).

Given a tenant's exclusive right to property during a leasehold, a landlord "has no right to prevent or prohibit persons from coming on the leased property at the invitation of the tenant."  49 Am. Jur. 2d *Landlord and Tenant* § 393.  In the absence of the parties' agreement to the contrary, the tenant has the right to invite people onto the premises for any lawful purpose, and a landlord may not prevent such individuals from entering and exiting the property through its common area. *Id.*;  *see also* 6 A.L.R. 465 (1920) ("[E]ach tenant [in a property controlled by a landlord] has the right to . . . have third persons who come upon the premises at the express or implied invitation of a tenant, and the landlord is not justified in unreasonably restricting the right of such third person to come upon the premises."). Moreover, a tenant's guests have the same right as the tenant to use a building's common space during reasonable times and in a reasonable manner.  *See* Restatement (Second) of Torts § 189 (Am. Law. Inst. 1965).

In *Greenpeace, Inc. v. Dow Chemical Co.*, this court recognized a tenant's right to use the common space for ingress to and egress from the leased premises, though it rejected the tenant's claim for civil trespass as it related to a non-invited third party's access to that area. 97 A.3d at 1060-61. In that case, we looked approvingly to and agreed with *Aberdeen Apartments v. Cary Campbell Realty Alliance, Inc.*, 820 N.E.2d 158 (Ind. Ct. App. 2005), in which the Court of Appeals of Indiana held that a tenant "must have the right to permit visitors to pass through the common areas in order to enter" the tenant's unit, even though a landlord retains the exclusive possessory interest in the common area. *Greenpeace*, 97 A.3d at 1061 (quoting *Aberdeen Apartments*, 820 N.E.2d at 165-66).

The landlord's only obligation to the tenant at common law was under the "covenant of quiet enjoyment," which assured that the tenant's "possessory interest would not be invaded by the landlord or by anyone with rights superior to those of the landlord." *Sobelsohn*, 926 A.2d at 715; *see also Hyde v. Brandler*, 118 A.2d 398, 399-400 (D.C. 1955) (noting that the covenant of quiet enjoyment "goes only to the possession, not to the title" of leased premises). A tenant's right to quiet enjoyment means that the tenant "has possession of the property and is free to come and go from the property without the landlord's interference." 49 Am. Jur. 2d *Landlord and Tenant* § 469. The covenant also requires that a landlord not

"obstruct[], interfere[] with, or take[] away from the tenant in a substantial degree the beneficial use of the leasehold." 49 Am. Jur. 2d *Landlord and Tenant* § 473. Moreover, a landlord must "not act in other ways that interfere unreasonably with permissible uses of the leased premises." *Sobelsohn*, 926 A.2d at 716; *see also* Restatement (Second) of Prop.: Landlord Tenant § 6.1 (Am. Law Inst. 1977) ("Except to the extent the parties to a lease validly agree otherwise, there is a breach of the landlord's obligations if, during [the tenancy], the landlord . . . interferes with a permissible use of the leased property and the tenant has not consented to the conduct."); 49 Am. Jur. 2d *Landlord and Tenant* § 399 ("In the absence of an express restriction, . . . the tenant generally has the right to use the premises for any lawful purpose for which they are adapted.").[5]

---

[5] We also acknowledge that, at least in certain circumstances, "a landlord has a duty to use reasonable care to keep safe those common areas of the building retained under his control." *Graham v. M & J Corp.*, 424 A.2d 103, 105 (D.C. 1980); *see also Kline v. 1500 Mass. Ave. Apartment Corp.*, 439 F.2d 477, 482 (D.C. Cir. 1970) ("[W]e place the duty of taking protective measures guarding the entire premises and the areas peculiarly under the landlord's control against the perpetration of criminal acts upon the landlord, the party to the lease contract who has the effective capacity to perform those necessary acts."). Thus, a landlord may have the right to exclude certain persons who may foreseeably engage in criminal acts or cause injury to tenants and their guests. *See Graham*, 424 A.2d at 105 (recognizing foreseeability as the "key element in establishing the landlord's duty"); Restatement (Second) of Torts § 189 cmt. c ("The privilege [of a tenant's guest to use common space] is . . . subject to the right of the landlord to make reasonable regulations concerning entry upon or use of the portions of the premises retained within his control, for the protection of the premises themselves or of other tenants."). We leave the precise scope of this duty for another day. *Cf. Winston v.*

Courts have adhered to these common law principles, finding that a tenant's guest may not be criminally prosecuted for unlawful entry when invited onto property by a tenant, despite being barred from that property by a landlord. *See State v. Schneider*, 265 P.3d 36, 38 (Or. Ct. App. 2011) ("Under the common law, landlords cannot prevent a tenant's guest from entering an apartment complex's common areas."); *Commonwealth v. Nelson*, 909 N.E.2d 42, 45 (Mass. App. Ct. 2009) ("If a person passes through the halls of a residential apartment building at the legitimate invitation of a tenant, he cannot be convicted of criminal trespass."); *City of Bremerton v. Widell*, 51 P.3d 733, 738 (Wash. 2002) (en banc) (recognizing the common-law rule that a landlord may not prevent tenant's guest from entering the tenant's premises by passing through the common areas, but that a guest may exceed the invitation by wandering to areas distant from the tenant's apartment); *State v. Dixon*, 725 A.2d 920, 922 (Vt. 1999) ("The common law is clear that the landlord may not prevent invitees or licensees of the tenant from entering the tenant's premises by passing through the common area. Moreover, the law is clear

---

*United States*, 106 A.3d 1087, 1090-91 (D.C. 2015) (citing 14 DCMR § 9600.5 (2020) and noting that regulations applicable to the District's public housing require the District of Columbia Housing Authority (DCHA) to permit entry to a resident's guest and only authorize DCHA to bar such guest if he or she "engages in any activity that threatens the health, safety or right to peaceful enjoyment of the premises by other residents or DCHA employees or violates DCHA policy"). Our holding here recognizes only a tenant's right to invite guests to enter premises for a lawful purpose and to allow that guest to use the common areas necessary for ingress and egress from the tenant's unit.

that an invitee or licensee who does so, even after a specific prohibition by the landlord, is not a trespasser and does not violate a criminal trespass statute."); *Arbee v. Collins*, 463 S.E.2d 922, 925 (Ga. Ct. App. 1995) ("The tenant's invitation to a third party . . . carries with it the same rights enjoyed by the tenant to common areas in a multi-dwelling apartment complex to the extent the use of such common areas is connected to the purpose of the invitation."); *L.D.L. v. State*, 569 So.2d 1310, 1312 (Fla. Dist. Ct. App. 1990) ("A landlord generally does not have the right to deny entry to persons a tenant has invited to come onto his property.").

We acknowledge that the landlord-tenant relationship has evolved from these traditional, common law principles to leases. *See Sobelsohn*, 926 A.2d at 715 (discussing *Javins v. First Nat'l Realty Corp.*, 1428 F.2d 1071 (D.C. Cir. 1970)). However, we are not tasked here with interpreting the respective parties' agreement concerning the invitation of third parties, and therefore stop short of recognizing any contractual limitation therefrom.

From the common law, we can distill the following general principles. First, tenancy grants a tenant exclusive possessory rights to the leased property for the term of a lease. Second, a landlord may not prohibit a tenant from inviting a third party onto the tenant's property for any lawful purpose. Third, a landlord may not

prohibit a tenant, and his or her guests, from reasonably using the common space for entry or exit. Fourth, a landlord must not unreasonably interfere with the tenant's permissible uses of the leased premises.

We therefore conclude that, for purposes of the unlawful entry statute, a person does not enter or remain on property "against the will of the lawful occupant or of the personal lawfully in charge thereof" when the person is invited onto the property by a tenant for a lawful purpose and reasonably uses the property's common space for entry and exit. D.C. Code § 22-3302(a)(1). Stated another way, a landlord may not prohibit a tenant from inviting a third party onto leased premises for a lawful purpose, nor may the landlord prohibit such third party from entering or exiting the property through the property's common space.

Our holding here does not encompass all situations involving shared property rights. We also recognize that, in certain circumstances, "a person may be lawfully in charge even though there are other persons who could, if they chose to do so, countermand or override his authority." *Whittlesey v. United States*, 221 A.2d 86, 91 (D.C. 1966). Additionally, we express no opinion about the rights of one tenant to prohibit another tenant's guest from accessing certain common space. *See, e.g.*, *Greenpeace,* 97 A.3d at 1060-61; *Penny v. United States*, 694 A.2d 872, 875 (D.C.

1997) (noting that the court's holding in *Woll*, that a tenant can prohibit others from accessing the corridor immediately outsider her door, "does not necessarily mean that any tenant of an apartment in a multi-unit building has authority to exclude other persons from a common area in another part of the building"). Each of these scenarios pose distinct challenges that are not present in these facts and therefore do not require us to opine further.

**IV.**

Applying our holding to the facts of this case, we find that the government failed to prove beyond a reasonable doubt that appellant entered the premises against the wishes of a lawful occupant or owner of the Washington View Apartments. Ms. Pratt – whose testimony the trial court credited – testified that she moved into the apartment complex on December 9, 2017, and made no agreement with the landlord that limited her right to invite guests onto the property. That evening, she invited appellant onto the property to assist with her move; once completed, she testified that appellant and his brother "walked from [her] building to the[ir] house," and, on the "way to the[ir] home," "were stopped by police officers." Officer Lina, who confirmed this account from appellant, did not verify appellant's statement and had no knowledge of whether appellant's aunt was a tenant. *See Bean v. United States*,

709 A.2d 85, 86-87 (D.C. 1998) (finding insufficient evidence to prove unlawful entry when the record did not demonstrate that officer asked appellant his purpose for being at the property, when the government had burden to prove that he was "not on the premises for a legitimate reason, *e.g.*, to visit a resident"). None of the evidence credited by the trial court – that when appellant was apprehended, he was not walking toward his aunt's house, carrying any moving items, or near the building in which his aunt's unit was located – undermine the scope of Ms. Pratt's invitation to appellant or undermine her credited testimony that appellant finished assisting her and was on his way home when stopped by police officers.[6]

Specifically, the government introduced no evidence to prove that appellant was either not exiting the property or using a reasonable means of egress when Officer Lina apprehended him. As we stated earlier, a tenant's guest has the right to reasonably use common areas for entry and exit. Although the trial court found that the testimony "about where [appellant] was actually seen" when apprehended did not show "that he was coming from her house at that time," it also credited evidence concerning appellant's route and destination, i.e., Ms. Pratt's testimony that

---

[6] The trial court decided appellant's conviction on appellant's reasonable, bona fide belief, a defense to unlawful entry. See *supra* note 3. That analysis did not consider the element on which this case turns, whether appellant entered the property against the will of the lawful occupant or person lawfully in charge.

appellant was apprehended on his way home. Regardless, the government has not proven that the location where Officer Lina apprehended appellant was not along a route that was a reasonable means of egress from the Washington View Apartments. The government offered no proof to rebut the aunt's testimony that appellant was reasonably exiting the property when apprehended, and thus failed to prove an element of unlawful entry.

In short, the evidence demonstrates that appellant entered the Washington View Apartments at the invitation of his aunt, and that he was apprehended after visiting his aunt to help her move into her apartment and while walking home from her apartment unit. Further, no evidence refuted Ms. Pratt's testimony that she had not agreed to limit her ability to invite guests onto the property for lawful purposes. Thus, the government failed to prove the appellant entered the property against the will of a lawful occupant or owner. Because the government failed to prove an element of the offense of unlawful entry, there was insufficient evidence to convict appellant. *See Schneider*, 265 P.3d at 38-39 (reversing conviction for criminal trespass when "state did not introduce evidence that the lease agreement limited [the tenant's] authority to invite guests" and the state failed to establish that the defendant-guest, who was on the premises conducting "an activity within the scope of his invitation" by the tenant, was "was not lawfully on the premises").

## V.

For the abovementioned reasons, appellant's conviction is reversed.

*So ordered.*